## ATKINS v. UNITED STATES.
### Civ. A. No. 2336.

United States District Court
W. D. Louisiana, Shreveport Division.
Sept. 30, 1949.

Tucker, Bronson & Martin, of Shreveport, La., for plaintiff.

C. Moxley Featherston, Special Assistant to the Attorney General, of Washington, D. C.

William J. Fleniken, Assistant United States Attorney, of Shreveport, La., for defendant.

PORTERIE, District Judge.

The plaintiff, John B. Atkins, is a resident of Shreveport, Caddo Parish, Louisiana. This is an action to recover income and victory taxes in the amount of $8,054.95, alleged to have been erroneously and illegally collected from plaintiff, plus interest. Jurisdiction exists by virtue of Section 24 (20) of the Judicial Code, as amended, 28 U.S.C.A. § 41 (20) [now § 1346].

On or about March 15, 1944, plaintiff filed his income and victory tax return for the calendar year 1943 in which he reported a tax liability of $57,451.07, and at that time paid that amount to the Collector of Internal Revenue at New Orleans, Louisiana. On March 28, 1945, William E. Logan, Internal Revenue Agent in Charge, New Orleans Division, forwarded to plaintiff a report of examination of plaintiff's income tax liability for the year 1943 proposing a deficiency. Plaintiff protested the proposed deficiency. A conference was held on November 22, 1946, with the Agent in Charge in New Orleans on the protest. On February 7, 1947, the Agent in Charge forwarded to plaintiff a so-called "Revised Statement of Net Income and Tax Liability" showing an alleged deficiency of $14,515.93 in plaintiff's income and victory tax for the year 1943.

The Collector of Internal Revenue, New Orleans, Louisiana, issued a deficiency assessment for the amount of $14,515.93. To avoid the imposition of penalties and further interest which otherwise would have been asserted by the Collector, on April 4, 1947, plaintiff paid the Collector the sum of $16,986.02, which was the aggregate of the above deficiency assessment, plus $2,470.09, being interest thereon at 6 per cent from March 15, 1944, to January 16, 1947.

On June 30, 1947 plaintiff filed with the Collector of Internal Revenue a claim for refund (Form 843 of Treasury Department, Internal Revenue Service) for $8,054.95 for excessive income and victory taxes assessed and collected for the year 1943. The claim for refund was regularly received by the Collector, who acknowledged receipt of it and forwarded it, in due course, to the Commissioner of Internal Revenue in Washington, D. C. More than six months elapsed without the claim either having been denied or granted, whereupon this suit was filed.

For the year 1943 plaintiff paid $57,451.07, plus the deficiency of $14,515.93, or a total of $71,967, in income and victory taxes and in addition thereto, interest on the deficiency. The claim for refund, and this suit which is based on it, is for $8,054.95, plus interest on that amount. The defendant takes and has taken the position that all of the income from Atco Investment Company for the year 1943 must be included in the plaintiff's income (subject to the community division) and may not be divided for the purposes of computing income taxes three-fourths to plaintiff and one-fourth to John B. Atkins, Jr., as is provided for in the agreement of partnership of Atco Investment Company. Plaintiff takes the position that he is not required to account for income distributed to John B. Atkins, Jr. by the partnership, Atco Investment Company, in accordance with its articles of partnership. The question of which of these two opposing positions is correct is the sole issue of this law suit.

We believe that the following findings of fact will develop sufficiently the rest of the narrative.

At the conclusion of the trial, we noted that there was very little dispute, if any at all, over the facts; the case all depended upon which of the two theories of law, presented by opposing counsel, the court would adopt. Accordingly, we requested, in addition to the briefs, suggested findings of fact and suggested conclusions of law from both sides, stating in part: "I want you to present your findings of fact and conclusions of law in the exact form in which you would like the court to hold."

After study and deliberation, we feel that the law of the plaintiff should prevail. This explains, if it does not pardon,

why we have adopted practically verbatim from the plaintiff's suggestions.

### Findings of Fact.

1. This is an action to recover income and victory taxes in the amount of $8,054.-95, plus interest. Jurisdiction exists by virtue of Section 24 (20) of the Judicial Code as amended.

2. To avoid the imposition of penalties and interest which otherwise would have been asserted by the Collector of Internal Revenue, New Orleans, Louisiana, the plaintiff, John B. Atkins, on April 4, 1947, paid a deficiency assessment rendered against him for the year 1943. On June 30, 1947, plaintiff filed a claim for refund with the Collector of Internal Revenue in the principal amount for which this suit is brought. More than six months elapsed without the claim either having been denied or granted, whereupon this suit was filed.

3. In determining the deficiency the Commissioner of Internal Revenue disregarded the existence of a partnership, Atco Investment Company, and included in the plaintiff's income a portion of the income of that partnership distributed or distributable to plaintiff's son, John B. Atkins, Jr. The question in this case is whether or not the Commissioner's action was correct.

4. During the year involved in this case and during prior years the plaintiff, who is a resident of Shreveport, Louisiana, was the managing partner of a company engaged in the business of refining gasoline in East Texas. He made investments in oil and gas royalties, operated an 8,500 acre farm and made investments consisting primarily of supplying capital to individuals. He has two sons and a daughter. One of the sons is a minor. Over a period of years the plaintiff has made investments in three businesses that are involved indirectly in this litigation. These investments consisted of supplying capital to individuals.

5. R. R. Brinkmann has been in the petroleum products marketing business for many years. In 1935 Brinkmann entered into a partnership with the plaintiff under the name of Highland Oil Company to engage in the business of marketing petroleum products. The plaintiff does not and never has participated in the management or control of that business, he supplied the capital and Brinkmann actively manages and operates the business. The business is in effect a "one-man business"; its profits being derived from the ingenuity of Brinkmann in purchasing and selling petroleum products in large quantities. The plaintiff receives monthly financial statements and is called upon to put up additional money when it is needed. The profits and losses under the partnership accrue 50% to each partner.

6. J. B. Saunders had been engaged in the petroleum products marketing business for some years prior to 1943 in St. Louis, Missouri. The plaintiff and Brinkmann had financed Saunders in his business. As of January 1, 1943, Saunders, Brinkmann and the plaintiff entered into an agreement of limited partnership styled "Triangle Refineries, Limited" for the purpose of engaging in the business of marketing petroleum products, with its principal office in St. Louis, Missouri. That business was owned 50% by Saunders, 25% by Brinkmann and 25% by the plaintiff. The partnership agreement designated Saunders as the managing partner and provided that the business should be "in the full and complete charge of the said J. B. Saunders". The plaintiff did not participate in the management or operation of that business. Here again the business was a "one-man" affair, with Saunders running it. Its profits were derived from Saunders' ingenuity in buying and selling petroleum products in large volumes. Saunders described the plaintiff's connection with the business as being that of a banker: "Q. Did you consult with Mr. Atkins? A. No sir, I did not. The only time I had anything to do with Mr. Atkins would be if I needed some money. That is all that he had connected with it. As far as Mr. Atkins is concerned, he is my banker, and that is all that he had to do with it." The plaintiff was not familiar with markets and market conditions in the petroleum products marketing business and

was not expected to keep in touch with this specialized business.

7. B. S. De Mering had been a specialist with an oil company in treating emulsions of oil and water that accumulate in the bottoms of oil storage tanks. In 1940 De Mering, who had done some work for Highland Oil Company, told Brinkmann that he wanted to go into the business for himself. Brinkmann sent De Mering to the plaintiff and the plaintiff financed De Mering in that specialized business. By 1943 the business was conducted under the name of Petroleum Dehydrating Company as a partnership with the plaintiff owning a 60 per cent interest. The business is managed and operated by De Mering and the plaintiff does not participate in its management or operation. He does not have the experience or technical knowledge required in that operation. The plaintiff's connection with Petroleum Dehydrating Company was that of supplying capital. Substantially all of its operations are outside of Louisiana, and principally in Illinois, Ohio and Texas.

8. In 1940 the plaintiff donated 25 shares of stock of Hanlon Gasoline Corporation of Texas to his son, John B. Atkins, Jr., who will sometimes be referred to as "John" for convenience. The donation was complete, unconditional and had "no strings attacked". The shares of stock were transferred on the books of the corporation to John and a certificate issued to him by the corporation. The plaintiff filed a Federal gift tax return for 1940 reporting the gift of the Hanlon stock to John. All of this occurred some three years prior to the formation of Atco Investment Company, the partnership involved in this litigation.

9. John was 18 years old on November 25, 1942. In June of 1943 he petitioned the First Judicial District Court of Caddo Parish, Louisiana, to relieve him of all of his disabilities of non-age, so that he could manage his own estate. The record of those proceedings shows that at that time he had an estate of in excess of $10,000. On June 13, 1943, that Court, after finding that he was fully capable of managing his own affairs, entered a judgment relieving him of all of the disabilities of non-age.

10. He served in the Armed Forces of the United States both in this country and in the Italian Theater from November of 1942 through June of 1945.

11. On July 1, 1943, the plaintiff and John entered into a partnership agreement forming Atco Investment Company. The agreement of partnership provided for the contribution of capital 75 per cent by plaintiff and 25 per cent by John. Provision was made for the profits to be shared and the losses borne in the same proportion—75 per cent to plaintiff and 25 per cent to John.[1] The plaintiff con-

---

1. The agreement provides as follows:
"State of Louisiana:
"Parish of Caddo:
"Be it Known by These Presents:
"That on the 1st day of July, A. D., 1943, John B. Atkins and John B. Atkins, Jr., both residents of Caddo Parish, Louisiana, did and do by these presents enter into a contract of partnership as follows:
"Article I.
"The name and style of the firm shall be the Atco Investment Company, and the said business shall be carried on with headquarters in the City of Shreveport, Caddo Parish, Louisiana, unless removed elsewhere by mutual consent.
"Article II.
"That the said partnership shall commence on and from the 1st day of July, A. D., 1943, and continue during the life of the partners, with the right in either partner to request and require a termination or liquidation of the partnership by giving the other partner thirty days written notice.
"Article III.
"That the said John B. Atkins shall contribute to the said partnership, as his share or portion of the capital, his equity in the Highland Oil Company, Triangle Refineries, and the Petroleum Dehydrating Company at the value appearing on each company's books, as of this date.
"That the said John B. Atkins, Jr., shall contribute and place into the said partnership twenty-five shares of stock of the Hanlon Gasoline Corporation of Texas at its market value, government bonds at their market value, as of this date, and sufficient cash added thereto,

tributed to the capital of Atco Investment Company his equity or interest in Highland Oil Company, Triangle Refineries, Limited and Petroleum Dehydrating Company at the then value of his interests in those businesses as shown by their books. The aggregate value of his contribution to capital, as thus computed, was $124,276.07. John, the son, contributed $21,758.68 in cash, U. S. Government Bonds of $3,000 and 25 shares of stock of Hanlon Gasoline Corporation of Texas, valued then at $16,666.67, being $666.67 per share. The aggregate value of John's contribution to capital, as thus computed, was $41,425.35.

Capital Contribution to
Atco Investment Company

Plaintiff

John

| | | |
|---|---|---|
| 75% of $165,701.42 — | $124,276.07 | |
| 25% of 165,701.42 — | 41,425.35 | |

Total Capital Contribution $165,701.42

12. John borrowed $20,000 of the cash that he contributed from his father, giving him a note for it. The note was later repaid by John out of distributions of profits to him by Atco Investment Company.

to make the value of his contribution one-third the value of the contribution of John B. Atkins.

"Article IV.

"That the interest of the said John. B. Atkin in the partnership shall be a seventy-five percent interest and the interest of the said John B. Atkins, Jr., in said partnership shall be a twenty-five percent interest, and the net profits and gains of said business in said co-partners shall be divided seventy-five percent to John B. Atkins and twenty-five percent to John B. Atkins, Jr., and the losses, if any there be, shall be borne by them in like proportion.

"Article V.

"The administration of the affairs of the said partnership shall be exercised jointly by the partners, but John B. Atkins shall continue to represent the partnership as the administrating partner in the Highland Oil Company, Triangle Refineries, and the Petroleum Dehydrating Company and all funds received from those partnerships shall be by him endorsed over to the Atco Investment Company. For the convenience of the partnership, the stock of the Hanlon Gasoline Corporation of Texas and the government bonds shall continue to stand in the name of John B. Atkins, Jr.; all funds, however, received from said stock and said bonds shall be paid over by the said John B. Atkins, Jr., to the Atco Investment Company.

"Article VI.

"That each one of the co-partners shall have the right to sign checks, promissory notes, contracts and other obligations in the name of the firm.

"Article VII.

"There shall be had and kept during the continuance of the said co-partnership, perfect, just and true books of account in which shall be entered and fairly written and set down, from day to day,

all matters and things relating to said business, such as purchases, sales, etc., which books shall be used in common between said co-partners, so that either of them shall have free access thereto without the interruption of the other.

"Article VIII.

"In case of the death of either co-partner previous to the expiration of the co-partnership, it is hereby agreed that the surviving partner shall carry on said business under this agreement or contract, for the benefit of himself and the legal heirs or representatives of the deceased co-partner, until he shall gradually wind up said co-partnership, without detriment thereto, which might otherwise be caused by a hasty closing up of the concern. He will have six months to operate said liquidation.

"Article IX.

"At the end of the term, being the expiration of said partnership, or in case of the termination by written notice, prior thereto, the assets of the partnership of like kind, as near as possible, shall be returned to the partner from whom received. The purpose being to return to each individual partner at the termination of the partnership the assets, as near as possible, contributed by him to the partnership; thus restoring to him that which was contributed by him, and in said connection, a full and final statement of all things shall be made, and profits or losses shall be divided seventy-five percent to John B. Atkins and twenty-five percent to John B. Atkins, Jr.

"Witness Our Hands And Signatures in the presence of the undersigned competent witnesses, on this the 2nd day of July, A. D., 1943.

"Attest:

"R. A. Worley John B. Atkins
"Mary A. Carr John B. Atkins, Jr."

13. After forming Atco Investment Company the partners caused the partnership agreement to be filed and recorded in the public records of Caddo Parish, Louisiana. A bank account was established in a bank in Shreveport on the bank's standard form of partnership agreement providing for the withdrawal of funds on the signature of either the plaintiff or John. The cashier of the bank and the bank itself recognized Atco Investment Company as being a partnership composed of the plaintiff and John.

14. Before Atco Investment Company was formed the plaintiff contacted each of the three operating partners, Brinkmann, Saunders and DeMering, in each of the three businesses, Highland Oil Company, Triangle Refineries and Petroleum Dehydrating Company, and advised them that he wished to transfer his ownership in those businesses to a partnership composed of himself and his son. Each partner consented to the transfer. Brinkmann suggested that the plaintiff's name be left on the books of Highland Oil Company as owning the interest—stating that if that were done it would eliminate the necessity for a lot of explanations to Highland's creditors, and to the companies with which it did business as to what Atco Investment Company was. This procedure was adopted in the case of each of the three operating companies. The agreement of partnership therefore provided that the interest in each of the three operating businesses transferred by the plaintiff to the Atco Investment Company should remain on the books of the respective companies in the name of the plaintiff. No one was misled by this arrangement, however, since each of the three operating partners in the three businesses gave permission to the transfer of the plaintiff's interests prior to the transfer, and since the transfer of those interests was fully set forth in the agreement forming Atco Investment Company, which agreement itself was promptly filed and recorded in full in the public records. The provision of the agreement forming Atco Investment Company, requiring the partners to endorse over to Atco any checks received by them from companies owned in part by Atco, but which stood on the books of those companies in the name of one of the partners of Atco, has been complied with in full.

15. During the absence of the plaintiff's son, John, in the Armed Services he was kept informed by his father with respect to Atco Investment Company's investments. Since Atco Investment Company's income was not the result of the management or services of either of its partners, John's absence from this country in the Armed Services has no significance with respect to that income.

16. Shortly after Atco Investment Company was formed it made an investment in a business formed to manufacture a carbonated beverage. L. J. Franklin had been in the business of manufacturing or bottling that beverage for a number of years, having a proprietary interest in a plant at Shreveport and in a plant at Monroe, Louisiana. The parent company which issued franchises to local bottlers and distributors advised Franklin that he could get a franchise for five East Texas Counties. Franklin came to the plaintiff for assistance in financing a company to exploit the franchise. The plaintiff agreed for Atco Investment Company to invest in the venture. Franklin was given two checks, drawn on the account of Atco Investment Company, aggregating $15,000. The funds thus advanced by Atco Investment Company were used by Franklin to purchase property and construct a plant to bottle the beverage in Carthage, Texas. A partnership agreement was drawn up under the name of 7 Up Company of Carthage and the interest of Atco Investment Company was put in the name of the plaintiff. Franklin knew that the investment was being made by Atco Investment Company, consented to the arrangement and used Atco Investment Company funds for the purposes indicated above. The plaintiff does not and has not participated in the management or conduct of that business which has been run, operated and managed exclusively by Franklin.

17. The defendant contends that the value of the assets transferred by plaintiff to Atco Investment Company was proportionately greater than the value of the assets transferred by John; and that this is shown by comparing the revenues derived from these assets in years prior to the formation of Atco Investment Company. This approach does not take into consideration the nature of the several assets transferred to Atco Investment Company. For instance, the 25 shares of stock transferred to Atco Investment Company by John was stock in a corporation engaged in the business of manufacturing gasoline from natural gas in the East Texas field. By 1943 it had developed into a large, well-financed corporation. Its value had consistently risen over a period of years. In 1940 the stock had a value of $300 per share, by 1943 it had a value of $666.67 per share, and in 1946 or 1947 some of it changed hands at $1000 per share. By 1948, the last full year of operations before the trial of this case, that corporation was earning at the rate of in excess of $500 per share per annum prior to income taxes. Based on surveys of gas in the East Texas oil field, that corporation had an effective probable life of from 25 to 40 years at the time of the trial of this case.

18. While it is true that the earnings paid to Atco Investment Company in 1943 on the investments contributed to capital by the plaintiff were proportionately higher than on those contributed by John, nevertheless, those investments contributed by the plaintiff were in "one-man" companies, whose duration depended on the will or life of the one man in each case. Those businesses were highly specialized and in the two petroleum products marketing businesses were in their nature, speculative and hazardous. By 1949 Highland Oil Company, the petroleum marketing business which produced large returns in 1943, was losing money. Supporting their opinions by cogent reasons each of the managing partners thought that the plaintiff's interest in his business was not worth in excess of its book value at the time that the plaintiff transferred those interests to Atco Investment Company.

## Conclusions of Law

1. It is found by this Court upon a consideration of all of the facts that the plaintiff and John joined in good faith into the partnership or venture Atco Investment Company "having agreed that the * * * capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits". Commissioner of Internal Revenue v. Culbertson, 1949, 69 S. Ct. 1210, 1215.

2. The record in this case amply demonstrates that the earnings of Atco Investment Company were not produced by the personal services, efforts or labors of the plaintiff, or for that matter, by his son John; and on the contrary it conclusively shows that those earnings were the return on capital invested. T. W. Rosborough v. Commissioner of Internal Revenue, 8 T. C. 136.

3. The contribution to the capital of Atco Investment Company made by John constituted the contribution of capital originating with him within the meaning of Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; S. E. Boozer v. Commissioner, 6 CCH TCM 1021; see also Commissioner of Internal Revenue v. Culbertson, supra. John owned the stock that he contributed to capital with "no strings attached" and had owned it for some three years prior to the formation of Atco Investment Company. T. W. Rosborough v. Commissioner of Internal Revenue, supra.

4. The formation of Atco Investment Company was effected pursuant to provisions of the Civil Code of Louisiana which have been in effect since the adoption of the first Code in this State and which provisions in turn were adopted verbatim from the Code Napoleon of France. Revised Civil Code of Louisiana (1870), Art. 2871; Louisiana Civil Code of 1825, Art. 2842; Louisiana Civil Code of 1808, Art. 38, p. 396; Code Napoleon, Art. 1861: "Every partner may, without the consent of his partners, enter into a partnership with a third person, for the share which he has in the partnership, but he can not, without

the consent of his partners, make him a partner in the original partnership, should he even have the administration of it."

5. Not only was the partnership Atco Investment Company formed pursuant to the provisions of the above quoted Article of the Civil Code of Louisiana, but in addition, the consent provided for in that Article was obtained for the transfer of the plaintiff's interest in the various operating partnerships to Atco Investment Company and for the substitution of Atco Investment Company for plaintiff. Furthermore, the transfer of the ownership from plaintiff to Atco Investment Company and the substitution of Atco Investment Company for plaintiff in the operating partnerships was accomplished in the most effective manner possible in Louisiana, i. e., by recording the instrument of transfer in the conveyance records thereby effectively establishing Atco Investment Company's obligations to the public as a partner.

In his concurring opinion in Commissioner of Internal Revenue v. Culbertson, supra, Mr. Justice Frankfurter said:

"We should leave no doubt in the minds of the Tax Court, of the Courts of Appeals, of the Treasury and of the bar that the essential holding of the Tower case is that there is 'no reason' why the 'general rule' by which the existence of a partnership is determined 'should not apply in tax cases where the Government challenges the existence of a partnership for tax purposes.'

"In plain English, if an arrangement among men is not an arrangement which puts them all in the same business boat, then they cannot get into the same boat merely to seek the benefits of §§ 181 and 182. But if they are in the same business boat, although they may have varying rewards and varied responsibilities, they do not cease to be in it when the tax collector appears."

6. After a consideration of all of the evidence and testimony in this case the Court is convinced that the plaintiff and his son were "in the same business boat" in Atco Investment Company and that "although they may have varying rewards and varied responsibilities, they do not cease to be in it when the tax collector appears". Atco Investment Company might be termed a "joint venture" or a "pooling of assets" in common law terminology but that is of no significance in so far as taxation is concerned because partnerships, joint ventures, pools, and syndicates all receive the same treatment for federal income tax purposes. Internal Revenue Code § 3797(2), 26 U.S.C.A. § 3797(2). T. W. Rosborough v. Commissioner, supra.

7. After considering all of the testimony and evidence and judging the partnership or venture on the basis of the general rules applicable to partnerships of this type, and after considering the testimony of the parties, their agreement as a whole, and their conduct in the execution of its provisions, the Court has concluded that there was a bona fide intent on the part of the plaintiff and his son to join together as partners. Commissioner of Internal Revenue v. Culbertson, supra.

8. In essential principles this case is indistinguishable from T. W. Rosborough v. Commissioner, supra. In substance the same arguments were there advanced as are here made by the defendant, including the so-called "tax motive" argument.

9. The Court concludes therefore that no part of the income of Atco Investment Company distributed or distributable to John B. Atkins, Jr. in the year 1943 should be taxed as a part of the income of the plaintiff.

Therefore, there will be judgment for the plaintiff in an amount to be agreed upon by plaintiff and defendant pursuant to their stipulation filed at the time of the trial of the case.