**BOLOGNA et al. v. DONNELLY, Collector of Internal Revenue.**

**Civ. A. No. 2991.**

United States District Court
E. D. Louisiana, New Orleans Division.

April 30, 1953.

Kizer, Heaton & Craig, Frank S. Craig, Jr., Baton Rouge, La., for plaintiffs.

Lansing L. Mitchell, Asst. U. S. Atty., New Orleans, La., Richard M. Roberts, Sp. Asst. to the Atty. Gen., for defendant.

CHRISTENBERRY, District Judge.

The above entitled cause having come on for final hearing on the pleadings and proofs of the respective parties, and having been argued by respective counsel, the Court being fully informed in the premises, after due deliberation makes the following findings of fact and conclusions of law:

### Findings of Fact

**I.**

Giuseppe Bologna (also referred to as Joe Bologna), and his wife, Mrs. Giuseppe Bologna (Antonina Bologna), and Eustacho Bologna (also referred to as Eugene Bologna), and his wife, Mrs. Eugene Bologna (Mary Lungaro Bologna), plaintiffs in this action, are all citizens of the United States and residents of Baton Rouge, East Baton Rouge Parish, Louisiana; and plaintiffs have all had such citizenship and residence during all the taxable years involved in this action and for many years prior thereto.

**II.**

During all the taxable years involved in this action, Charles A. Donnelly, defendant, resided and now resides in New Orleans, Orleans Parish, Louisiana, in the New Orleans Division of the Eastern District

534

of Louisiana within the jurisdiction of this Court. During the same time, and especially since prior to June 24, 1949, defendant was Collector of Internal Revenue of the United States for the District of Louisiana, and continued to hold such position until after this action was begun.

## III.

For several years prior to September 30, 1942, Giuseppe Bologna and Eustachio Bologna were the sole partners, in equal shares, in a business partnership in the Parish of East Baton Rouge, Louisiana, known as Bologna Bros. Each of the partners had been married to his respective wife prior to the formation of this partnership. The partnership was engaged in the wholesale whiskey, beer and wine business and in the wholesale and retail grocery business.

## IV.

Mr. and Mrs. Giuseppe Bologna were and are the parents of four (4) children, namely: Frank G. Bologna, Frances Ann Bologna (now Mrs. Vincent J. Serio), Antonio Joseph Bologna, and Eleonora Marie Bologna. Mr. and Mrs. Eustachio Bologna were and are the parents of three (3) children, namely: Francis Marion Bologna, Frances Teresa Bologna (now Mrs. John L. Barcelona) and Pietra Ann Bologna (now Mrs. Samuel A. Brocato, Jr.).

## V.

On September 30, 1942, Mr. and Mrs. Giuseppe Bologna donated in trust to each of their children as beneficiary, each child then being a minor, a one-twentieth (1/20) interest in the business known as Bologna Bros., and on the same date Mr. and Mrs. Eustachio Bologna donated in trust to each of their children as beneficiary, each of the said children then being a minor, a one-fifteenth (1/15) interest in the business known as Bologna Bros. Each of the donations was by formal written instrument before a Notary Public and two witnesses. In each of the trusts created by Mr. and Mrs. Giuseppe Bologna, Eustachio Bologna and Calogero Lungaro were appointed trustees; and in each of the trusts created by Mr. and Mrs. Eustachio Bologna, Giuseppe Bologna and Calogero Lungaro were appointed trustees. Each of the donations was specifically stated to be irrevocable, and the trusts created were to endure until the twenty-first birthday of each respective beneficiary. Among other provisions, each of the trust instruments provided that no part of the trust property nor the income therefrom should be distributed by the trustees, and the trustees were expressly prohibited from using any of the trust property or income during the period of the trust for the education, support or maintenance of the beneficiaries or either of them.

## VI.

Prior to making the donations to their children, Mr. and Mrs. Giuseppe Bologna had discussed the idea of making such gifts to their children, and Mr. and Mrs. Eustachio Bologna had likewise discussed the idea of making such gifts, and Giuseppe and Eustachio Bologna had also talked the matter over between themselves. According to these discussions, the idea and purpose of each of the donors in making such gifts was to provide an incentive to each of their children to continue in the prosperous business established by their parents, and to encourage stability and family harmony in the business. There were no discussions whatsoever of any purpose or intent to avoid taxes through the use of such gifts. After the plaintiffs herein had decided to make such gifts, Giuseppe and Eustachio Bologna instructed their attorney and their auditor to do what was necessary to carry out their decision.

Gift tax returns on these gifts were filed and the tax paid; additional gift tax assessments were made as a result of a decision of the Tax Court of the United States and these assessments were also paid.

## VII.

In the summer of 1943, during the first year of the existence of the trust, Mr. Lungaro, who was the father of Mrs. Eustachio Bologna, became seriously ill and unable to perform any functions as trustee, and found it necessary to resign his position as such. At the same time, Giuseppe Bologna and Eustachio Bologna also resigned as co-trustee of their respective trusts, and

Mr. Charles Cangelosi, a resident of Baton Rouge, East Baton Rouge Parish, Louisiana, was named as trustee for each of the trusts for the children of both Giuseppe Bologna and Eustachio Bologna, in accordance with the provision of the original trust agreements. A formal written instrument, before a Notary Public and two witnesses, was executed for this purpose. At the time of his appointment, and at the present time, Mr. Charles Cangelosi was and is a very successful business man in Baton Rouge, owning considerable property, and being the manager of the Baton Rouge Ice Company, a partnership in which both Giuseppe and Eugene Bologna were partners, and serving, among other capacities, as a Director of the City National Bank of Baton Rouge, and of the Union Federal Savings and Loan Association of Baton Rouge.

## VIII.

Beginning September 30, 1942, it was the intention and purpose of all the parties concerned with the partnership known as Bologna Bros., that is, Giuseppe Bologna and Eugene Bologna, the original partners, together with the trustees of each of the trusts which had been created, to continue to carry on the business known as Bologna Bros. as a partnership composed of themselves, and the business was so continued. After Mr. Charles Cangelosi became trustee of the trusts, it was the intention and purpose of Giuseppe Bologna, Eustachio Bologna and Charles Cangelosi, that the business be carried on as a partnership composed of Giuseppe Bologna, Eustachio Bologna, and Charles Cangelosi as trustee for each of the trusts, and the business was so continued.

## IX.

After the creation of the trusts, and the continuation of the business as a new partnership, Giuseppe and Eustachio Bologna continued as managing partners in the business, Giuseppe Bologna being generally in charge of the whiskey business and Eustachio Bologna generally in charge of the grocery and produce business. Mr. Lungaro, for the one-year period, and then Mr. Cangelosi, as trustee and partner, did not attempt to manage or interfere with any of the operating details of the business, but did maintain general supervision over the interests of the trusts in the business. After his appointment, Mr. Cangelosi visited the place of business of Bologna Bros. occasionally, every two weeks to a month, to see how business was getting along. Each year when the annual audit was made, he checked the audit and the books to see that the trusts were credited with their proper share of the profits. The business continued to be increasingly successful, and he left the major part of the profits belonging to the trust in the business, but he did during the year 1945 invest $7,500 apiece for each of the trusts (except that of Frank G. Bologna, who was then twenty-one years of age) in United States War Bonds, and during 1946 he made an investment of $2,000 each for the same trusts in stock of The Citizens Building and Loan Association of Baton Rouge. He also took part in major decisions regarding the business, such as the purchase of $100,000 worth of United States War Bonds on two or more occasions. The nature of the business in buying and selling whiskey, beer, wine and produce was such that there were very few policy decisions to be made, particularly during the war years when supplies were limited and fixed, prices were set, and demand exceeded supply.

## X.

The business of Bologna Bros. required increasingly large inventories of whiskey, beer, wine and produce, and also necessitated buying in large quantities, and since a considerable part of the sales were on credit, required the carrying of many thousands of dollars worth of accounts receivable at all times. Consequently, the capital interests in the business which had been given to their children by Mr. and Mrs. Giuseppe Bologna and Mr. and Mrs. Eustachio Bologna were very important income producing factors in the business.

## XI.

After the creation of the trusts, a separate set of books was set up for each of the trusts, and accounts for each of the trusts were set up on the books of Bologna Bros. The trustee books were kept by Miss

Annie D'Agostino, the head bookkeeper for Bologna Bros. All of these books were open to inspection by the trustee, and the trusts' books were under his general supervision. Each year the trusts were credited both on the books of Bologna Bros. and on the individual books of each with its proportionate share of the net profits for that fiscal year. The only withdrawals which were charged to the trust accounts were for payment of income taxes, and withdrawals of funds for investment by the trustee in United States War Bonds and stock of the Citizens Savings and Loan Association as set out above. In addition, each year each of the trusts contributed its proportionate part to a check given to Mr. Cangelosi as trustee at Christmas time which amounted to $50 for each of the trusts of which he was trustee. No part of the funds of the various trusts, or the income from the business which was credited to each of the trusts, was used for the support or maintenance or education of the various beneficiaries, but Giuseppe Bologna and Eustachio Bologna continued to bear these expenses themselves as long as their children were minors. Giuseppe Bologna and Eustachio Bologna were paid no salary by the partnership, and all withdrawals by them were charged to their capital account in the business.

## XII.

At the end of each fiscal year on which the partnership operated, September 30th, a balance sheet audit was made of the books of Bologna Bros. by the firm of certified public accountants employed by the partnership, and the trusts' books were also checked by this firm to see that the trusts were properly credited with their proportionate part of the net profits, and that charges to the trust accounts were in accordance with the trust instruments. During the first year of the trusts, due to a bookkeeping mistake, certain payments for education of some of the minor beneficiaries were charged to the trust accounts, but at the end of the year during the audit the mistake was discovered, and the necessary entries made to credit the trust accounts and to charge these expenses to Giuseppe Bo-

logna and Eustachio Bologna. The reports of these audits, and the balance sheets which were a part of these reports, showed the interest of the trusts in the business, and the composition of the partnership as including the trustee of the trusts as a partner. These balance sheets were furnished to the local banks in Baton Rouge with which the partnership did business, to Dun & Bradstreet, to the distilleries from which the partnership purchased its supplies and which were the major creditors of the partnership, and to a credit rating publication known as the Blue Book. In other dealings with the public and with the government, such as the securing of licenses and reporting of social security information, the partnership was shown to be composed of Giuseppe Bologna and Eustachio Bologna and the trustee of the trusts.

## XIII.

Mr. Cangelosi, as trustee, maintained a separate checking account for each of the trusts, in which he deposited the money withdrawn by him from the business for the purpose of making investments for the trusts, and he was the sole person whose signature was authorized to write checks against these accounts. He also maintained a safety deposit box for which he alone had a key, where he maintained the bonds and stocks which he purchased for the trusts as investments.

## XIV.

Each of the children of Giuseppe Bologna and Eustachio Bologna began to work in the business of Bologna Bros. in his or her early teens, or even prior thereto in some instances. This work consisted of doing the detail work of which they were capable, such as placing stamps on whiskey, sweeping the store, answering the phone, and the other jobs which enabled these children to learn the business from the bottom up. This work was done generally in the afternoons after school, during vacation time, and during holidays. At the time of the donations in 1942, the children were told they had been given an interest in the business, which would be in trust for them until they reached the age of twenty-one.

## XV.

At the time of the trial of this action, all but one of the four children of Giuseppe Bologna are grown, and all of the three children of Eustachio Bologna are grown. The formal education of all of these children who are now grown ended upon graduation from high school, except in the case of Frances Ann Bologna, daughter of Giuseppe Bologna, who is now Mrs. Vincent J. Serio. She attended four years of college, and was married a few months after her graduation from college. However, she took a business course at college with the intention of qualifying herself to work in the business of Bologna Bros. upon her graduation, and she did work there in the summers and during holidays. Frank G. Bologna, the eldest son of Giuseppe Bologna, was inducted into the Army when he finished high school, serving for thirty-two (32) months. Upon his discharge he returned to full time work in the business and has continued there to the present time. Francis M. Bologna, the eldest son of Eustachio Bologna, entered college after his graduation from high school, but remained there only a month or two, when he resigned to enter full time into the business of Bologna Bros. He has continued there since that time, except for a period in excess of one year spent in the Army. Antonio J. Bologna, the other son of Giuseppe Bologna, decided upon graduation from high school to not enter college, but to enter the business of Bologna Bros. on a full time basis. Since that time, he has continued to work full time in the business, except for a brief period during which he took a business and accounting course for the purpose of better equipping him to carry out one particular phase of the business. Frances Teresa Bologna, now Mrs. John L. Barcelona, did part time work in the business during high school, in vacations and during holidays and after school. She was married in October of the year that she graduated from high school. Pietra Ann Bologna, now Mrs. S. A. Brocato, Jr., the youngest daughter of Mr. and Mrs. Eustachio Bologna, did similar part time work in the business, as her schooling allowed, until her marriage. Eleonora Marie Bo-logna, the youngest daughter of Mr. and Mrs. Giuseppe Bologna, is still a minor.

## XVI.

After Frances Ann Bologna became engaged to Vincent J. Serio, and a month or two before they were married, Serio began to work in the business of Bologna Bros., and has continued there full time since then. Immediately after the marriage of Frances Teresa Bologna to John L. Barcelona, Barcelona also began to work in the business on a full time basis, and has continued there since that time, except for a brief period of a month or two when he assisted his father in another activity. Immediately prior to the marriage of Samuel A. Brocato, Jr. to Pietra Ann Bologna, he also began full time work in the business of Bologna Bros., and continued doing so until his recent induction into the Army.

## XVII.

At the time of the trial of this case, all of the sons of Giuseppe and Eustachio Bologna were participating full time in the business, and the husbands of all of the daughters of Giuseppe and Eustachio Bologna (except for Eleonora Marie Bologna, still a minor) were likewise participating full time in the business on the basis of their wives' capital interest therein.

## XVIII.

As each of the Bologna children reached the age where the trusts created for his or her benefit terminated, that child was shown the books of the business as to the capital interest in the business which belonged to him or her, this being done usually by the father of that particular child. In each instance, it was explained to that child that the interest in the business was now his or hers, to do with as he or she saw fit, either to leave in the business or to withdraw it. In each instance, also, the child decided to leave the interest in the business and to continue in the business as the partner, and it was the understanding and agreement among all parties concerned, from time to time, that the business continue as the partnership composed of Giuseppe Bologna, Eustachio Bologna, Charles Cangelosi, as trustee for the trusts which

were still in existence and the major children as to whom the trusts had terminated and who had decided to continue on in the business.

### XIX.

Since the donations in trust were made on September 30, 1942, neither the capital nor the income attributable thereto has been used by nor has benefited the donors, Mr. and Mrs. Giuseppe Bologna and Mr. and Mrs. Eustachio Bologna. During the existence of the trusts, the only withdrawals charged against the interest of the trusts in the business were for taxes and investments as set out above. Since the termination of the trusts of the six children who are grown, and who have continued in the business, in the case of the boys, or through their husbands, in the case of the daughters, very substantial use has been made by each of these children for his or her own benefit, by withdrawals from the business against his or her capital account in it, for living expenses, purchase of automobiles, and other items, and in the case of Frank G. Bologna, Frances Ann Bologna Serio, Antonio J. Bologna and Francis M. Bologna, for the purpose of building their homes. A recapitulation of these withdrawals compared to the share of the profits of the business attributable to the interest of each, from September 30, 1943 to September 30, 1952, including the years during which the trusts existed and which the only withdrawals were for taxes and investments, shows the following:

| Name | Share of Profit | Withdrawals | Percentage of Withdrawals to Profits |
|---|---|---|---|
| Frank G. Bologna | $105,363.50 | $ 74,176.07 | 70.40 |
| Frances Ann Bologna (Serio) | 105,363.65 | 102,773.41 | 97.54 |
| Eleonora Marie Bologna | 74,461.82 | 29,752.46 | 39.96 |
| Antonio Joseph Bologna | 105,363.49 | 71,964.19 | 68.30 |
| Francis Marion Bologna | 124,003.70 | 102,046.02 | 82.29 |
| Frances Teresa Bologna (Barcelona) | 124,003.72 | 60,015.89 | 48.40 |
| Pietra Ann Bologna (Brocato) | 124,003.56 | 57,610.66 | 46.46 |
| Totals | $762,563.44 | $498,338.70 | 65.35 |

### XX.

Partnership returns were filed by Bologna Bros. for the fiscal years ending September 30, 1943, September 30, 1944, September 30, 1945, and September 30, 1946, showing the net income of the partnership distributable and distributed to the partners thereof in accordance with the agreement for an existence of such partnership between Giuseppe Bologna, Eustachio Bologna, and the trustees or trustee of the trusts. Individual community returns for Giuseppe Bologna and Mrs. Giuseppe Bologna, and individual community returns for Eustachio Bologna and Mrs. Eustachio Bologna were filed for the taxable years ending December 31, 1943, 1944, 1945 and 1946, on the basis of the distribution of the partnership net income as shown in the said partnership returns. The Collector made deficiency assessments against the plaintiffs for the taxable years 1943, 1944, 1945 and 1946 through disallowance of the partnership by denying that the trustees or trustee of the various trusts were members of the partnership, and by reallocating the entire net income of the partnership for these taxable years to the plaintiffs.

### XXI.

The plaintiffs paid these deficiency assessments and filed timely claims for refund with the defendant. This action was brought after the plaintiffs received notice by registered mail of the disallowance in full of these claims. Similar claims and

disallowances were made of plaintiffs' payment of interest on the tax assessed.

### Conclusions of Law

#### I.

The Court has jurisdiction of this action and of the parties thereto.

#### II.

Upon a consideration of all the facts, the Court finds that Giuseppe Bologna, Eustachio Bologna, and the trustees or trustee of the trusts created by them and their wives joined together in good faith to conduct the business of Bologna Bros., without any purpose of evading or avoiding the payment of federal income taxes, and that the arrangement was real, honest and bona fide, so that all the ordinary incidences and effects of an agreement of partnership flowed therefrom. Commissioner of Internal Revenue v. Culbertson, 1949, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Turner v. Commissioner, 5 Cir., 1952, 199 F.2d 913; Tomlinson v. Commissioner, 5 Cir., 1952, 199 F.2d 674; Alexander v. Commissioner, 5 Cir., 194 F.2d 921; Seabrook v. Commissioner, 5 Cir., 196 F.2d 322; Ginsburg v. Arnold, 5 Cir., 185 F.2d 913; Arnold v. Green, 5 Cir., 186 F.2d 18; Atkins v. United States, D.C., 86 F.Supp. 342, affirmed, 5 Cir., 191 F.2d 146, rehearing denied, 5 Cir., 191 F.2d 951, certiorari denied 343 U.S. 941, 72 S.Ct. 1033, 96 L.Ed. 1347.

#### III.

The trusts to which the interests in the business were donated and the beneficiaries of the trusts upon their termination were the true owners of the capital contributions to the business of Bologna Bros., as that term has been defined. Tomlinson v. Commissioner, cited above.

#### IV.

The family partnerships in question were valid partnerships under Louisiana Law. Louisiana Statutes Annotated–Civil Code, Articles 2801, 2805, 2809.

#### V.

There was no reservation by donors, and no actual exercise by them, of any "bundle of rights" in regard to the trust property or the income attributable to it as that term is defined in Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

The capital contribution to the partnership of each of the trusts was a very material income producing factor for the partnership. Commissioner of Internal Revenue v. Culbertson, cited above, and other cases cited above.

#### VI.

The actual conduct of the Bologna children, the beneficiaries of the trusts, in working in the business part time during the time of their schooling, and full time thereafter in the case of the boys, and the full time participation in the business of all the husbands of the Bologna daughters (except the one still a minor and unmarried) verifies the bona fide nature and purpose of the donations in trust and the family partnership created. The actual use by the children for their individual benefit of very substantial amounts withdrawn from the business also bears out the bona fide nature of the partnership. "Whether he is free to, and does, enjoy the fruits of the partnership is strongly indicative of the reality of his participation in the enterprise". Commissioner of Internal Revenue v. Culbertson, cited above [337 U.S. 733, 69 S.Ct. 1217].

#### VII.

The partnership should be allowed for federal income tax purposes for the taxable years involved, and the Collector, defendant herein, was in error in assessing the entire net income of the partnership to plaintiffs, who should be taxed only upon the portion of the net income as shown in the partnership returns.

Therefore, there will be judgment for the plaintiffs as sued for, in amounts to be agreed upon by plaintiffs and defendant pursuant to their stipulation to that effect at the time of the trial of the case.