ISAAC BLUMBERG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16104.   Promulgated October 25, 1948.

*Morris Kanfer, Esq.*, for the petitioner.
*E. M. Woolf, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The sole issue involved in this proceeding is whether during the taxable year 1943 there existed a valid partnership between petitioner and his son George in the operation of Blumberg's Department Store, Portsmouth, Virginia, and whether this partnership should be recognized for Federal income tax purposes. The parties to the partnership agreement themselves have recognized it. A partnership return on Form 1065 was filed by Blumberg's Department Store, in which it was stated that the partners were Isaac Blumberg and George Albert Blumberg. On this partnership return the distributive share of the profits of Isaac Blumberg was shown to be $150,935.75. These profits he returned for taxation and paid taxes thereon. On the partnership return the distributive share of the profits of George Blumberg was shown to be $52,811.92. These profits he returned for taxation and paid tax thereon.

The Commissioner on his part refused to give recognition to the partnership and added George's share of the profits to the net income of petitioner. He did this upon the ground that George contributed no capital of his own to the business and contributed no services of any importance to the partnership in 1943 and, therefore, should not be recognized as a partner, under the doctrine of the Supreme Court in *Commissioner* v. *Tower*, 327 U. S. 280, and *Lusthaus* v. *Commissioner*, 327 U. S. 293.

Petitioner in his brief argues that the substance of the Supreme Court's decisions in the *Tower* and *Lusthaus* cases was that:

The test in determining the bona fide character of a family partnership is to ascertain whether the partners *really and truly* intended to join together for the purpose of carrying on a business and sharing in its profits, or whether the partnership was a mere sham utilized solely for the purpose of reducing a taxpayer's true tax liability by a pretended distribution of income.

We think the foregoing statement is a very good summary of the rationale of the Supreme Court's decisions in the *Tower* and *Lusthaus* cases.

It seems to us that the facts in the instant case show that it was clearly the intention of petitioner and his son George to form a bona fide partnership, effective January 1, 1943, when they each signed the written partnership agreement in August 1942 and that it was not a mere sham for tax evasion purposes. George was petitioner's only son and for several years he had in mind the plan and purpose to take George in as a partner, if and when he reached an appropriate age and demonstrated a willingness to engage in the business and make a career of it for himself. In furtherance of this plan George, at the suggestion of his mother and father, quit school in December 1939 and entered the store to learn the business from the ground up. He commenced his training at the "bottom," starting in the shipping and freight room and learning the fundamentals of how merchandise is checked in. Then he was trained as a salesman, then as assistant to the buyer, then in the position of floorwalker, and then as buyer. In 1941, when petitioner became ill and he and his wife had to go to Florida to give petitioner the opportunity for a rest, George was left in charge of the business, with power of attorney to sign all checks. Upon petitioner's return from this trip he received favorable reports from his senior employees as to George's conduct as manager of the business. Again, in 1942 petitioner and his wife went to Florida for several weeks and left George in charge. Upon petitioner's return he again received favorable reports as to George's conduct of the store while petitioner and his wife were away. Later on petitioner talked over with George the fulfillment of his purpose to make him a partner in the business and to give him a one-fourth interest therein. Petitioner questioned George as to whether he had made up his mind that he was willing to make a career of the business. The substance of George's reply was that now that he had training and experience in the business he liked it and would be glad to make the business his career.

In August 1942 petitioner talked with his accountant and told him the substance of his conversation and agreement with George, asking him to draw up an agreement making George a partner in the business with a one-fourth interest therein. Petitioner emphasized to his accountant that George was not to have any interest in petitioner's outside property, which was considerable, but was only to be a partner in the business. The accountant stated to petitioner that, inasmuch as about eight months of the year 1942 had already gone by, it was his opinion that no attempt should be made to make the partnership effective for 1942, but that the agreement should provide that the part-

nership should be effective from January 1, 1943. Accordingly the partnership agreement was drawn up by the accountant and was signed by petitioner and George sometime in the latter part of August 1942. The full text of this partnership agreement is set forth in our findings of fact and need not be repeated here. Suffice it to say, we think, that under the terms of this agreement a valid, legal partnership was formed by petitioner and George, effective January 1, 1943. This is no partnership between husband and wife where the wife contributed no capital to the business and there was no intent that she should render any important services to the business, as was the case in the *Tower* and *Lusthaus* cases, *supra*. This is a case where a father takes his son into business after that son has had extended training in all departments of the business and after the son has demonstrated his fitness and competencé and has expressed his willingness to make the business his career. What could be more natural than for a father to take his son in as a partner under such circumstances? Cf. *William F. Fischer*, 5 T. C. 507. In the *Fischer* case we said:

> If a father can not make his adult sons partners with him in the business where they have grown up in the business and have attained competence and maturity of experience, then the law of partnership is different from what we understand it to be. Of course, it is true, as respondent argues, that petitioner could have continued to operate the business of Fischer Machine Co. as a sole proprietorship, and if he had done that, the entire net income of the business would have been taxable to him. On the other hand, he had the right, by agreement, to take in his two sons as partners and operate the business as a partnership. This latter thing he did, and we can see no reason which would justify us in disregarding it.

It is true that George contributed no capital to the business which originated with him. In that respect the instant case is different from the *Fischer* case. His entire one-fourth interest was given to him by his father. This gift was bona fide and has been lived up to. Petitioner paid gift tax on the full value of the gift, and George unquestionably owns a one-fourth interest in the business. If George should die, certainly this one-fourth interest would be included as a part of his gross estate. But respondent argues that, not only did George contribute no capital of his own to the business, but in 1943 he rendered no important and vital services to the business and was therefore not a partner in the business, relying on the *Lusthaus* and *Tower* cases for his support. But in considering respondent's contention we think certain important facts should be kept in mind. When the partnership agreement was signed in August 1942 George was rendering important and vital services to the business. The nature of these services is detailed in our findings of fact. It was expected that these services would continue during 1943, when the partnership was to become effective. It was recognized, however, that George might be inducted into

the military service and thereby be unable to render active services to the partnership during the period of his military service. During the course of the hearing George was asked the following question on cross-examination by respondent's counsel: "In August 1942 did you know that you were going to be inducted into the service in the near future?" To this question George answered as follows: "I felt I would be. I was capable and healthy and I saw no reason why I should not be."

Paragraph 8 of the partnership agreement provided for such contingency in the following language:

> 8. Both partners shall give whatever of their time and attention as is necessary to promote the purposes of this partnership, but nothing contained herein shall lessen the rights and privileges of George Albert Blumberg arising from this agreement, because of his inability to devote his time and energies to the partnership by reason of his service in the armed forces of the Country.

As our findings of fact show, George was inducted into the armed forces in December 1942. He remained in the United States several months in training camps during 1943 and was sent overseas in that year for military duty and served until 1945, when he was discharged. During the several months that George remained in the United States during 1943 he continued to keep in touch with the business by correspondence and rendered service in an advisory capacity. The nature of these services is detailed in our findings. Respondent argues that these advisory services were not of that vital and important character which the Supreme Court speaks of in the *Lusthaus* and *Tower* cases, both *supra*. We find it unnecessary to decide this point. It seems clear that these advisory services were of some importance to the business, but whether they were of that important character to the business mentioned by the Supreme Court in the *Tower* and *Lusthaus* cases we do not decide. Clearly, if George had remained on with the business in 1943 and had continued to render the same kind of services that he was rendering the business in 1942, he would have been recognized as a partner under the rationale of the *Lusthaus* and *Tower* cases. We do not understand the respondent to contend otherwise. His contention that George should not be recognized as a partner in 1943 is based on the fact that all of that year he was in the military service and did not and could not render any important and vital services to the business. That George ceased to be a partner on that account seems to us to be an untenable doctrine. Death, of course, terminates a partnership, but it would be a strange doctrine to say that one did not become a partner because he was inducted into the military service of his country and was thereby unable to personally serve the partnership. It seems to us that the Government should not be heard to say: "I will not recognize you as a partner even though you, in good faith, entered into it. I took

you into the Army to fight a war and you did not perform services for the partnership as you had agreed to do."

Under the facts of this case we think George was a bona fide partner in Blumberg's Department Store in 1943 and was entitled to one-fourth of the net profits, and the Commissioner's action in adding this one-fourth of the net profits to petitioner's net income is reversed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TURNER, *J.*, dissenting: On the facts found, it is my opinion that there was no partnership between the petitioner and his son during the taxable year 1943. The most that could be said of the agreement of August 1942 is that it contemplated the consummation of a partnership on January 1, 1943. Prior to that time, however, petitioner's son entered the Army and consummation of the partnership plan had to await his return from service. In the majority opinion it is said that to hold that George ceased to be a partner because of his induction into military service would be an untenable doctrine. Such reasoning assumes the existence of a partnership from which George could have ceased to be a member upon his entry into the Army. The fact that he may have become a partner, pursuant to the terms of the agreement, if he had not been called into service, can not in my opinion be of any controlling importance; and the further fact that he was prevented by the draft from entering upon an activity which would have been very lucrative to him does not make his case different from the thousands of other young men who answered the call of their country— whether by draft or voluntarily—and should in no way tend to serve this petitioner, George's father, with a split of his income for income tax purposes. That petitioner may have been willing to contribute a part of his income to his son away in the service, though commendable, is no answer to the requirements of the Federal revenue statute which requires the earner of the income to report such income and pay the income tax thereon. *Lucas v. Earl*, 281 U. S. 111.

I accordingly note my dissent.

HILL and OPPER, *JJ.*, agree with this dissent.