HARGROVE BELLAMY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20651. Promulgated May 18, 1950.

*William W. Owens, Esq.,* for the petitioner.
*George J. LeBlanc, Esq.,* for the respondent.

OPINION.

TURNER, *Judge*: The primary issue is whether Robert, petitioner's son, should be recognized in the taxable years 1943 through 1945 as a partner with petitioner in the wholesale drug business conducted under the name of Robert R. Bellamy & Son.

That Robert was not in reality a partner is in our opinion clearly shown by the facts, and little discussion of the issue is indicated or required. The so-called partnership agreement was signed by Robert while a student at the University of North Carolina in March, 1943. He was then 18 years of age and had been enlisted in the V–1 Program of the United States Navy since the preceding November. He had "sort of understood" that at some time he would go into the drug business with his father, but so far as the record shows he had otherwise given very little, if any, thought or time and attention to the business. Sometime in 1942, while at home from the university, the petitioner told him he would make him a partner with a 49 per cent interest, but did not tell him how the matter was to be accomplished, and, except for the amount of the interest he was to have, none of the details of the arrangement were ever shown to or discussed with him prior to March, 1943, when the agreement herein was sent to him for his signature. So far as appears, Robert raised no questions and made no inquiries, but merely signed the agreement as drawn and returned it to petitioner. Thereafter he generally did whatever petitioner suggested or told him to do. He did not participate in the operation of the business and it seems clear that it was not intended that he should participate.

. As for the petitioner, the instrument itself indicates rather definitely that he had no thought or intention of relinquishing any of his control over the business or its assets. He was to continue to have full and complete charge of the operation. He was to have the sole authority

to invest funds, purchase equipment, hire and discharge employees, and in all respects the right and power to manage the conduct and operation of the business as he saw fit. The profits were distributable only in his discretion. He was to have the right to reacquire the 49 per cent interest at any time upon demand at the then book value, whereas Robert was not free to sell or dispose of his interest to anyone except the petitioner. Unlike petitioner, however, it does not appear that Robert had any right to require petitioner to reacquire the said interest. It is true that there were some formalities designed to indicate the purchase of an interest in the business by Robert from petitioner, but the record also shows that the $128,903.15 fixed as the price was not what petitioner would have regarded as a fair market price for a 49 per cent interest in the business. It did not include any amount for good will and petitioner regarded it as being too low. He would not have sold to an outsider at such a price. Further, he required Robert to execute the note instead of indulging in the formality of a gift because his specific gift tax exemption had already been absorbed and, except for the exemption or exclusion allowable for the particular year, the full amount of the gift would have been taxable to him. Later on the details of the financing were arranged by petitioner largely to suit his own interest and his own convenience. Robert had little to do with it.

There is some argument or suggestion that the terms of the instrument were worked out by the attorney who drew it, but the only provision the attorney assumed full responsibility for was the provision fixing the compensation petitioner was to receive as managing partner, and that provision would have permitted petitioner to draw as salary amounts substantially in excess of the net profits shown for any year prior to 1941. There is also some suggestion or argument that the lack of participation by Robert in the management of the business during the years is of no importance because the business generally was being managed quite satisfactorily by Gayer, to the end that the petitioner himself was required to devote very little time or attention to the business. Be that as it may, the terms of the agreement did retain for petitioner full and complete control over the business, and it is not without significance that, when Robert did actually return from his war service in the navy and did actually begin to work in the business, a completely new and revised agreement was drawn and executed and the sweeping controls retained by petitioner in the 1943 agreement were eliminated.

On the facts herein, we think it clear and have concluded that "the parties in good faith and acting with a business purpose" did not intend to join and did not actually join "together in the present conduct of the enterprise." *Commissioner* v. *Culbertson*, 377 U. S. 733.

See also *Commissioner* v. *Tower*, 327 U. S. 280, and *Lusthaus* v. *Commissioner*, 327 U. S. 293. *Isaac Blumberg*, 11 T. C. 663, relied on by petitioner, is not the same as this case.

The respondent concedes that in the event his determination as to the primary issue is sustained, the petitioner will be entitled to deductions for additional state income taxes which will result from such determination. Having sustained the respondent on the primary issue his concession will be given effect in a recomputation of the deficiencies.

*Decision will be entered under Rule 50.*