Olita M. Alford v. Commissioner. Fred F. Alford, Sr. v. Commissioner.
Alford v. Commissioner
Docket Nos. 16854, 16855.
United States Tax Court
1950 Tax Ct. Memo LEXIS 76; 9 T.C.M. (CCH) 896; T.C.M. (RIA) 50266; October 17, 1950
*76 At a prior hearing of this case a continuance was granted on representation of counsel for petitioners that in the absence of additional legislation beneficial to petitioners' cause by the Congress then in session, a decision might be entered for the deficiencies determined by the respondent. It was so stipulated in open court by counsel. Held, that petitioners are bound by the stipulation and such beneficial legislation not having been enacted, decision for the deficiencies determined by respondent will be entered. Held, further, that the alleged partnership between petitioner, Fred F. Alford, Sr., and his minor son in the operation of a refrigerated warehouse business was not a valid partnership recognizable for tax purposes under the decision of Commissioner v. Culbertson, 337 U.S. 733. John N. Jackson, Esq., for the petitioners. J. Marvin Kelley, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent has determined deficiencies in petitioners' income taxes for 1943 and 1944 as follows: 1943
1944
Fred F. Alford, Sr.
$13,990.47
$10,165.21
Olita M. Alford
13,990.47
10,575.20
The cases *77 are before us both on the merits and on the motion of respondent for a decision for the full amount of the deficiencies, based on the stipulation which the parties submitted at a prior hearing before this Court. The sole question in issue on the merits is whether in 1943 and 1944 Fred F. Alford, Sr., and his son, Fred F. Alford, Jr., were partners in a warehouse business conducted in the name of "Merchants Cold Storage of Dallas." Olita M. Alford is a partner only because of her community interest in the disputed income. The term petitioner as hereinafter used will refer to Fred F. Alford, Sr. The facts relating to the respondent's motion for judgment will be set out separately following the general facts. Findings of Fact The petitioners are residents of Dallas, Texas. They filed their income tax returns for 1943 and 1944 with the collector of internal revenue for the second district of Texas. The petitioner is a certified public accountant and is the managing partner in an accounting firm known as "Fred F. Alford & Company", with offices at Dallas, Texas. He was formerly associated with the firm of Ernst & Ernst at Dallas, Texas. In January 1937 petitioner acquired *78 a lease and cold storage warehouse business which he began operating as a sole proprietorship. He had become interested in the business after making an audit of its books while employed by Ernst & Ernst. The former tenant had defaulted on the lease prior to that time. When he took over the business petitioner retained most of the personnel employed by the former operator. Some time between January 1 and March 15, 1942, petitioner and his wife filed gift tax returns for the calendar year 1941, in which each reported a gift to their son, Fred F. Alford, Jr., of an "Undivided 1/4 interest in cold storage business operated by Fred F. and Olita M. Alford under the trade name of Merchants Cold Storage of Dallas." The assets listed in the returns consisted of the following items: Insurance deposit
$ 49.00
Lease improvements
31,778.16
Equipment
7,500.01
Supplies
1,254.00
$40,581.17
Less: Notes payable
15,000.00
$25,581.17 The alleged gifts were also reported in a donee's return filed by Fred F. Alford, Jr. On December 31, 1941, petitioner and his son executed a partnership agreement in which they represented that each was the owner of an undivided one-half *79 interest in Merchants Cold Storage of Dallas, petitioner's one-half interest being the community property of himself and his wife, and that the parties desired to continue the operation of such business as a partnership. Under the terms of the agreement the petitioner was to be the managing partner with full power to operate the business as he deemed "wise, expedient or proper and for the best interest of the partnership." For his services as manager petitioner was to receive 20 per cent of the annual profits, but not in excess of $15,000 or less than $6,000 per annum. This compensation was to be treated as an expense of the partnership. The remaining profits, or losses, were to be shared equally by the partners, as were the assets upon termination of the partnership. The agreement further provided that: "Distribution of net profits shall be made from time to time by mutual agreement of the parties. So long as Second Party is a minor, any distribution for his account shall be made to the duly appointed guardian of his estate. Under no circumstances shall First Party be authorized to use any part of Second Party's interest in partnership funds for the education, support or maintenance *80 of Second Party so long as he is a minor. No distribution made to the guardian of Second Party's estate shall be available for the maintenance, support or education of Second Party except upon order of the court in which the guardianship proceedings are pending, based on a finding by such court that neither First Party nor Mrs. Olita M. Alford are financially able to discharge their obligation to support, maintain and educate Second Party during his minority." Petitioner devoted not more than 25 per cent of his time to the warehouse business during the taxable years involved. The business was carried on largely by the old employees who had stayed on with the petitioner after he acquired it. The petitioner's compensation as managing partner under the partnership agreement amounted to $13,319.18 for 1942 and $15,000, the maximum, for 1943 and 1944. During each of these years petitioner received income from his accounting business amounting to $21,826.80 in 1942, $19,396.56 in 1943, and $20,264.44 in 1944. Partnership returns were filed in the name of Merchants Cold Storage of Dallas for 1942, 1943 and 1944, in which there was reported net income, inclusive of petitioner's salary, *81 in the respective amounts of $65,279.08, $82,162.76 and $74,997.46. At the time he was allegedly made a partner in the warehouse business with petitioner, Fred F. Alford, Jr., was ten years of age and was attending grammar school. He has attended school regularly since that time. At the time of the hearing he was in his sophomore year in the school of engineering at Southern Methodist University. During his school vacations he worked at the warehouse doing various odd jobs and was paid at the regular rate for such services. On September 28, 1943, Fred's mother was appointed his guardian by order of the county court of Dallas County, Texas. The court issued an order on November 12, 1943, authorizing the guardian to retain Fred's interest in Merchants Cold Storage of Dallas as an asset of his estate. As guardian she filed annual accounts for the fiscal years ended October 12, 1944, and October 12, 1945, in which she reported withdrawals from the partnership of $13,627.68 in 1944 and $9,719.17 in 1945, all of which was paid to the collector of internal revenue in settlement of Fred's income tax liability. Petitioner's wife did not take any active part in the operation of the warehouse *82 business at any time. Both before and after her appointment as Fred's guardian she was kept informed about the business and from time to time made suggestions to petitioner about its operation. Petitioner and his son did not in good faith, and acting with a business purpose, intend to join together in the present conduct of the warehouse business under the name of Merchants Cold Storage of Dallas. Facts as to Motion for Decision on Stipulation Deficiency notices were mailed to petitioners October 1, 1947. Thereafter, petitions and answers were duly filed and in due course the cases were set for hearing at Dallas, Texas, on June 7, 1948. On May 17, 1948, petitioners filed a motion for continuance of the hearing on the ground that the petitioner was occupied with other matters and would be inconvenienced if required to attend the hearing at that time. The motion for continuance was opposed by respondent. On June 5, 1948, petitioner wrote the following letter to Mr. J. L. Backstrom, Technical Staff, Dallas, Texas: "Reference is made to the above entitled cases which are set for hearing before the Tax Court on June 7, 1948. Motion has been filed by petitioners to continue these *83 cases. "One of the reasons why we would like to have the cases continued is that there is now pending before Congress proposed legislation dealing with the general subject of family partnerships. It appears unlikely that any final legislation will be enacted at this session of Congress, but it is possible that legislation will be enacted sometime next year. At this time it is, of course, impossible to say whether such legislation would benefit my wife and me insofar as the tax determinations which have been made in the above entitled cases are concerned. However, it is my desire that the cases be continued in order that I may be protected in the event such legislation is beneficial to us. "Accordingly, in consideration of your agreement to the continuance of these cases, we agree that we will not contest the determination of the Commissioner in these cases except upon the basis of the application of legislation which may be enacted by Congress dealing with family partnerships." The case was called for hearing on the Dallas calendar on June 7, 1948, at which time counsel stated that they had reached an agreement for continuance of the hearing on the following terms and conditions: *84 that if no additional or amendatory legislation was enacted affecting family partnerships beneficial to the petitioners' cause the deficiencies determined by the respondent would not be contested. The following colloquy took place between the Court (Judge Opper presiding) and counsel: "THE COURT: What I wish you would do is to get together somehow on an agreement for a final disposition of this proceeding one way or another. If you want some time to think about it today, that is satisfactory to me, but I can't leave it on an open-end basis like that so that if nobody decides to press the matter, it may stay on our docket for ten years. "MR. WINSTED: We would be very glad to stipulate and agree it be taken off the docket if there is no legislation at the next session of Congress. "THE COURT: 81st Congress? "MR. WINSTED: It is pretty apparent there won't be any legislation this term. I think there is a very strong possibility there will be next term. We will be very glad to stipulate unless there is legislation next term. "THE COURT: That the deficiency, that an order be entered for the amount of deficiency. Is that satisfactory to you? "MR. KELLEY: That is satisfactory. *85 "THE COURT: As I understand it, the Petitioner agrees if there is no legislation with respect to family partnerships or legislation which would dispose of this case favorably to the Taxpayer at the next session of Congress, that thereafter the case can be closed and a decision can be entered in favor of the Respondent for the full amount of the deficiency. Is that correct, Mr. Winsted? "MR. WINSTED: That is correct. "THE COURT: Is that satisfactory? "MR. KELLEY: That is satisfactory. "THE COURT: The case will be continued." On March 2, 1950, respondent filed with the Court then in session at Dallas, Texas, a "Motion For Decision For Respondent" in accordance with the stipulation entered into at the hearing on June 7, 1948. This motion, being opposed by the petitioners, was taken under advisement by the Court and petitioners were permitted to proceed with their evidence on the merits. Opinion LEMIRE, Judge: We will first consider respondent's motion for decision based on the stipulation of June 7, 1948. Petitioners claim that prior to the last trial date of February 28, 1950, and during January 1950, counsel for respondent agreed with their counsel to a trial of the *86 case on the merits. Petitioners state in their brief that: "Petitioners urge that the agreement of Respondent's counsel to try these cases on their merits does and should operate as a waiver, annulment and rescission of the stipulation referred to in Respondent's motion for decision." No agreement such as petitioners refer to is in evidence and we have no proof of its existence or its terms except the statement of petitioners' counsel. The respondent neither admits nor denies that such an agreement was ever made but relies upon the stipulation of record of June 7, 1948. We must, of course, limit our consideration of the question to the evidence in the record before us. As that now stands, the stipulation of June 7, 1948, has not been waived or cancelled or modified and must be given effect for whatever purpose it may serve. Petitioners urge that while no additional legislation affecting family partnerships such as contemplated by the stipulation of June 7, 1948, was enacted, the decision of the United States Supreme Court in the Culbertson case ( Commissioner v. Culbertson, 337 U.S. 733) "had the effect of clarifying many misconceptions that had theretofore been *87 widely held with respect to the recognition, for tax purposes, of partnerships among members of a family." It is claimed that the partnership between petitioner and his son was a valid partnership under the doctrine of the Culbertson case and that the granting of respondent's motion for decision would result, unjustly, in the imposition of a tax "highly penal in nature." Leaving the validity of the partnership for later discussion, we need only say here that the respondent seems to us to be well within his right in holding petitioners to their stipulation of June 7, 1948. This stipulation was entered into voluntarily by the petitioners on their own terms and for their own benefit. In reliance upon the stipulation the respondent consented to have this Court grant the continuance of the hearing which the petitioners requested. Agreements and obligations of this sort will not be lightly regarded by this Court. It is beyond denial that under the conditions of the stipulation petitioners are bound to submit to the entry of a decision for the full amount of the deficiencies determined by the respondent. In the circumstances here we think it is proper for us to leave the parties in the *88 position in which they voluntarily placed themselves before the Court and to enter a decision for the deficiencies. But even if we should be wrong in this respect, we think that respondent's determination must be sustained on the merits. We do not think that there was a partnership between petitioner and his son which can be recognized for tax purposes under the decision of the Supreme Court in the Culbertson case. The Court there said: "* * * We did not say [in Commissioner v. Tower, 327 U.S. 280] that the donee of an intra-family gift could never become a partner through investment of the capital in the family partnership, any more than we said that all family trusts are invalid for tax purposes in Helvering v. Clifford, supra [309 U.S. 331]. * * *
"The fact that transfers to members of the family group may be mere camouflage does not, however, mean that they invariably are. The Tower case recognized that one's participation in control and management of the business is a circumstance indicating an intent to be a bona fide partner despite the fact that the capital contributed originated elsewhere in the family. If the donee of property who then invests *89 it in the family partnership exercises dominion and control over that property - and through that control influences the conduct of the partnership and the disposition of its income - he may well be a true partner. Whether he is free to, and does, enjoy the fruits of the partnership is strongly indicative of the reality of his participation in the enterprise. * * *" None of the favorable conditions mentioned by the Court are found here. Petitioner's son was only ten years old at the time petitioner undertook to make him a partner and was incapable of making any material contribution of services to the business. He was not given funds to invest in the business, he did not exercise any dominion or control over it, did not in any way influence the conduct of the business, and had no voice in the disposition of the income from it. The purported gifts of an undivided interest in the business here made no substantial change in the economic relation of the members of the petitioner's family to the income derived therefrom. Commissioner v. Tower, 327 U.S. 280. The facts here are clearly distinguishable from those in cases like Isaac Blumberg, 11 T.C. 663, where *90 there was a gift by a father of a one-fourth interest in a department store business to a son who was twenty years of age and who was then rendering "vital and important services" to the business. We conclude on the evidence before us that the parties did not in good faith and acting with a business purpose intend to join together in the present conduct of the business of Merchants Cold Storage of Dallas. Commissioner v. Culbertson, supra.
Decisions will be entered for the respondent.