**GINSBURG et ux. v. ARNOLD et al.**

**No. 12381.**

United States Court of Appeals
Fifth Circuit.

Aug. 16, 1949.

On Rehearing Sept. 13, 1949.

WALLER, Circuit Judge, dissenting in part.

Harry C. Weeks, Frank B. Appleman, Richard U. Simon, Fort Worth, Tex., for appellants.

Helen Goodner, George A. Stinson, Sp. Assts. to Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., William P. Fonville, Asst. U. S. Atty., Dallas, Tex., for appellees.

Before HOLMES, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Plaintiffs, husband and wife, residents of Texas, a community property state, appeal from an adverse judgment in an action to

recover income taxes paid after a deficiency assessment had been levied against them covering the years 1942 through 1944, inclusive. The question encountered is whether a family partnership of the type presented in this instance is valid for tax purposes.

Using funds of the marital community, appellant, Nathan Ginsburg, the husband, has for a number of years engaged in the oil field supply business, operating as the Fort Worth Pipe and Supply Company. For about twenty years prior to 1939, this business was carried on as a partnership of Ginsburg and his brother, but from that date through 1941, he operated the business as sole proprietor. Though the supply business handled some new materials, the bulk of the operations were the purchase, salvage, and resale of used pipe in the oil fields. This pipe was obtained by dismantling pipe lines, buying up old leases, and from other similar sources.

The Ginsburgs had three children. Their son, Arthur I. Ginsburg, was graduated from Virginia Military Institute in 1936. Thereupon he immediately went to work in his father's business. His first job was assistant superintendent on a field crew, dismantling and removing some one hundred miles of ten-inch pipe. After this work was completed, Arthur took over management of the Monahans, Texas, branch of the business. During his time at this branch, he directed about forty per cent of the total business done by the company. In 1940, he returned to Fort Worth, headquarters of the business, and became assistant to his father. In the spring of 1941, as holder of a reserve commission, Arthur was called to active duty with the Army. After his release from military service in 1945, he returned to the business and was still so engaged at the time of trial. During the time he was in service, which included the tax years in contest, he did not perform any substantial services in the business. In addition to their son, the Ginsburgs had two daughters, Jeanette Marks, married and living in Houston where her husband was employed, and Helen, a school girl, who sometimes worked in her father's office during vacation. Though Nathan Ginsburg had,

while the son was still engaged in the business and prior to his call to service, said that he planned to do something for Arthur, he never was at all specific as to what that something was to be. Never was anything said to the daughters about a gift until about the time the gifts were made.

In the latter part of 1941, after Arthur had left for military service, the Ginsburgs discussed distribution of some of their property. Mrs. Ginsburg had voiced a desire to help a widowed sister and her family. In this connection, Mr. Ginsburg suggested a division of property in order that each could distribute his or her portion as desire dictated. It transpired that both taxpayers had the children in mind. After taking up the question, first with his accountant and later with his lawyer, a working plan was hit upon. In the latter part of February 1942, Mrs. Ginsburg had removed, by court order, her disabilities of coverture, and almost simultaneously gifts were made to each of the two older children, Arthur and Jeanette Marks, of fifteen per cent interests in all of the properties and interests of the parents. These gifts were made free of any partnership agreement and were made retroactive to the first of January 1942. The daughter, Jeanette Marks, immediately had her disabilities of coverture removed. About a month after the gifts were made, the donors, taxpayers, and the donees, their children, entered into the partnership agreement which is here questioned by the taxing authority. In January 1944, after her disabilities as a minor had been removed by court order, a gift was made to the youngest child, Helen, also a fifteen per cent interest, equal to those made to the older children. She was immediately taken into the partnership.

After January 1, 1944, the date on which the gift to Helen and her admission to the partnership took effect, the partnership consisted of the parents, owning fifty-five per cent of the business and all three children, each having a fifteen per cent interest. The net profits of the partnership were divided in ratio in 1942 and 1943, the two parents getting seventy per cent, Arthur and Jeanette Marks each getting fif-

teen per cent.[1] In 1944, the parents received fifty-five per cent of the net profits and Jeanette Marks, Arthur, and Helen each received fifteen per cent.[2]

The books were set up so that each of the partners had a drawing account reflecting in its amount each partner's share in the net profit of the business. These accounts were drawn upon from time to time by the several children, apparently with no limit as to amount. However, all checks had to be signed by the father, Nathan Ginsburg.

After examining returns made, representatives of the Commissioner recommended that all income be considered appellants' community income. After protest this was modified to the extent that only the total business income of the partnership was taxed to appellants. This business income constituted the bulk of the total income in each of the years.[3] Though claims for refund were duly filed subsequent to payment of the deficiency assessment which was levied, they were not allowed, and after the statutory period had passed this action was instituted in the district court.

After trial on stipulated facts and oral evidence, the judge in the court below found that Nathan Ginsburg built up his business and continues in control of that business as the "ruling spirit." On these grounds the judge found the income was in fact made by Ginsburg and rendered judgment for the defendant.

As a yardstick in judging the propriety of the decision below, we rely on the most recent statements on the family partnership problem, those found in Commissioner of Internal Revenue v. Culbertson et al., 1949, 69 S.Ct. 1210, 1214. There, Mr. Chief Justice Vinson, writing for the majority, stated: " * * * The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case [Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135], but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective

---

[1]

|  | 1942 |  |
| --- | --- | --- |
| Total net profit of partnership | | $37,444.84 |
| Partners' shares: | | |
| Nathan Ginsburg | $21,664.06 | |
| Mollie Ginsburg | 7,547.32 | |
| Arthur Ginsburg | 4,116.73 | |
| Jeanette Marks | 4,116.73 | 37,444.84 |

|  | 1943 |  |
| --- | --- | --- |
| Total net profit of partnership | | $36,479.10 |
| Partners' shares: | | |
| Nathan Ginsburg | $21,253.61 | |
| Mollie Ginsburg | 7,281.75 | |
| Arthur Ginsburg | 3,971.87 | |
| Jeanette Marks | 3,971.87 | 36,479.10 |

[2]

|  | 1944 |  |
| --- | --- | --- |
| Total net profit of partnership | | $28,344.99 |
| Partners' shares: | | |
| Nathan Ginsburg | $15,044.88 | |
| Mollie Ginsburg | 5,044.88 | |
| Arthur Ginsburg | 2,751.74 | |
| Jeanette Marks | 2,751.74 | |
| Helen Ginsburg | 2,751.75 | 28,344.99 |

[3] Business income of the partnership:

| 1942 | $30,713.57 |
| --- | --- |
| 1943 | 34,759.69 |
| 1944 | 25,539.92 |

abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

■ It is now clear that no decision favorable to the taxpayers may be predicated on work done by Arthur in years prior to the tax years being considered nor may his re-engagement in the business in years subsequent to these tax years be considered as justification for taxation of any of the income to him for 1942, 1943, or 1944, for: "* * * The intent to provide money, goods, labor, or skill sometime in the future cannot meet the demands of §§ 11 and 22(a) of the Code [26 U.S.C.A. §§ 11, 22(a)] that he who presently earns the income through his own labor and skill and the utilization of his own capital be taxed therefor. The vagaries of human experience preclude reliance upon even good faith intent as to future conduct as a basis for the present taxation of income." Commissioner v. Culbertson, supra.

While speaking of work done, it may be well to dispose of the question of work done in the office by the younger daughter. This was sporadic, minor duty carried on at times convenient to her and not interfering with her primary activities as a school girl. There is not a clear showing that she performed any of this work during the tax years, and, even if she had, it would not be that kind of endeavor which may be considered as having aided in the creation of the income being taxed.

■ Having found, in effect, that the only member of the partnership furnishing services in the years 1942 through 1944 was taxpayer Nathan Ginsburg, we turn to the capital used in creation of the business income to determine whether its use furnishes taxpayers with valid reason to avoid taxation on that portion of the business income assigned to the children-partners. While the capital interest furnished by the children was originally received by them as a gift from the taxpayers, this in and of itself does not nullify the partnership for tax purposes. The partnership will be disregarded, however, if the capital change is merely a surface movement while dominion and control remain in reality with the donor.

Concerning the capital contribution by donee in a family partnership, Mr. Chief Justice Vinson states in the Culbertson opinion: "* * * If the donee of property who then invests it in the family partnership exercises dominion and control over that property—and through that control influences the conduct of the partnership and the disposition of its income—he may well be a true partner. Whether he is free to, and does, enjoy the fruits of the partnership is strongly indicative of the reality of his participation in the enterprise."

■ While the net income in this partnership was distributable to the several partners according to their interest, through the expedient of the drawing accounts, there is no showing that anyone but the father, Nathan Ginsburg, controlled the capital used in production of the income. We do not believe the distribution of part of the net income to other members of the family is sufficient foundation upon which to erect a decision favorable to the taxpayer.

In agreement with the result reached by the court below, for the reasons hereinbefore set out, it is our opinion that during the tax years in question Nathan Ginsburg was the only partner who contributed such services to the operation of the business as would be styled as contributing to the earning of the business income and further that he was the only person really exercising control over the capital investment in the business.

The judgment appealed from is

Affirmed.

WALLER, Circuit Judge (dissenting in part).

I agree that there is evidence to support the District Court's conclusions that the partnership between the father and his daughters was not a bona fide arrangement entered into for the benefit of the partnership, but I dissent to the opinion of the

majority as to the son, Arthur Ginsburg, who had been rendering highly valuable and skilled services to the business for a long time before the Army called him, and since.

When he was called into service, it was doubtless necessary to hire somebody to serve in his place, and without doubt he paid, out of his share of the partnership income, his part of the expense of hiring someone to take his place, thereby lessening his proportion of the profits of the partnership. What one can do through himself he may do through an agent or servant, and if one is employing, or contributing substantially to the employment of, a servant to take his place, I hardly see how it can be said that he is rendering no service to the business. This should be reexamined by the District Court on another hearing.

Assuredly the partnership is valid under the common law and the laws of the State of Texas. The son owned an indivisible interest in the res of the partnership. I think we can judicially know that oil field pipe, along with everything else, increased in value and demand during the tax period. Such increases in selling prices over cost prices were doubtless the chief sources by which the income was produced, rather than the services of the father. Notwithstanding the fact that this increase was the "fruit of the tree", owned in part by young Ginsburg, the extent of such increase in value of stock on hand at the time of the formation of the partnership and which became taxable income, not produced by the father but by increase in the res, does not appear to have been considered either by the District Court or by us. This should be examined by the District Court on another hearing.

The Supreme Court agreed with the holdings of this Court in the case of Culbertson v. Commissioner[1] that the real test of taxability of family partnerships is the actuality, reality, and bona fides of the partnership. It did not hold, nor has it ever held, that the sole tests were the contribution of capital or the rendition of services in person by the incoming partner. These two tests are considered merely as pertinent circumstances along with other factors. There seems to be no question that as to the son there was a genuine partnership entered into for the benefit of the business. It being genuine, the Government should not—using the language of The Tax Court in Blumberg v. Commissioner, 11 T. C. 663,—say to the son: "I will not recognize you as a partner even though you in good faith entered into it. I took you into the Army to fight a war and you did not perform services for the partnership as you had agreed to do."

The decision of the Supreme Court in the Culbertson case confirms my conviction that the main test in these family partnership cases is whether or not a real, genuine, bona fide partnership was entered into for the benefit of the business as distinguished from an arrangement entered into for the relief of the taxpayer in the distribution of family income.

In this case, I think the evidence shows without the slightest dispute that there was a genuine, bona fide partnership entered into between the father and the son which had been—and in due course would again be—highly helpful to, and for the benefit of, the business. It was in recognition of past valuable, vital, and important services rendered by the son, and of those expected to be rendered when, and if, he returned from the armed service of his country. To say that the son cannot be recognized as a partner in his father's business in such cases is so shocking to my sense of justice that I will not willingly join in so saying. The fact that one's son is in the armed service is no reason why a father should not—but a good reason why he should—make a gift to that son of an interest in his business so that the son, like other men returning, may come back to a means of making a living—to a "nest egg", so to speak. It is still permissible in this country for a father to make a gift to his son, provided he pays the gift tax, as was done in this case.

The Congress went to great lengths in the enactment of the Selective Service Law. 50 U.S.C.A. Appendix, § 301 et seq., to

---

[1] Culbertson v. Commissioner, 5 Cir., 168 F.2d 979.

protect the rights of service men in providing that they should have their same employment when they were returned from the service, and I do not believe that Congress ever intended to penalize a father who, like Congress, had sought, lawfully and irrevocably, to provide his son with an interest in a business to which the son might hopefully return.

"The power to tax is the power to destroy" if the courts, instead of protecting against destruction, aid and abet it by putting into the law weapons of death with instructions as to how to use them.

Neither the common law, the statutes of Texas, nor the statutes of Congress ever fashioned the weapons for destroying bona fide father and son partnerships.

On Petition for Rehearing.

PER CURIAM.

Upon consideration of petition for rehearing the Court is of the opinion that the judgment heretofore rendered by it should be, and the same is hereby, vacated and set aside, and the judgment of the District Court is hereby reversed and the cause is remanded to the District Court for further consideration of the evidence heretofore or hereafter introduced and for the application of the legal principles announced by the Supreme Court in the case of Commissioner of Internal Revenue v. Culbertson, 337 U.S. 773, 69 S.Ct. 1210, and in accordance with the order of this court in Seabrook v. Commissioner of Internal Revenue, 176 F. 2d 605.