**GINSBURG et ux. v. ARNOLD et al.**

No. 13239.

United States Court of Appeals
Fifth Circuit.

Dec. 21, 1950.

Frank B. Appleman, Benjamin L. Bird, and Richard U. Simon, all of Fort Worth, Tex., for appellants.

Edward J. P. Zimmerman, Ellis N. Slack, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Frank B. Potter, U. S. Atty., Fort Worth, Tex., O. Morris Harrell, Asst. U. S. Atty., Dallas, Tex., for appellees.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

HOLMES, Circuit Judge.

This is the second appeal of this case. In the first appeal it was carefully reviewed by us in an opinion by Judge Lee, one judge dissenting. 176 F.2d 879. After the death of Judge Lee, our affirmance was vacated, and the judgment of the district court reversed and remanded for further consideration of the evidence in the light of the opinion of the Supreme Court in Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210.

For the further history of this litigation, see Ginsburg v. Arnold, 5 Cir., 176 F.2d 879, and 176 F.2d 884. On retrial, the lower court rendered substantially the same judgment that it rendered on the first trial, the adjudication being that there was no valid family partnership for tax purposes, and that the Commissioner's levy of deficiency assessments was correct.

Appellants are husband and wife, and residents of Texas, a community property state. They had three children: a son,

Arthur I. Ginsburg, and two daughters, Mrs. Jeanette Marks and Helen G. Ginsburg. Appellants owned, in community, the assets of the Fort Worth Pipe and Supply Company. On February 21, 1942, they executed two deeds conveying an undivided 15% interest to Arthur Ginsburg and Mrs. Jeanette Marks in all the property described in the deeds. This property consisted of a number of tracts of land and interests in oil and gas leases, and of certain fixtures, furniture, accounts, monies, notes receivable, good-will, and other personal property of every kind which composed and were a part of the business of the Fort Worth Pipe and Supply Company. Gift tax returns were filed in March, 1943, reporting as gifts the conveyances to Arthur Ginsburg and Mrs. Jeanette Marks, resulting gift taxes being paid. A partnership agreement dated March 30, 1942, but by its terms effective January 1, 1942, was entered into between appellants and their two children, Arthur and Jeanette.

Under the partnership agreement, each partner had an equal right to make withdrawals; Nathan Ginsburg was the general manager at a salary of $10,000 per year, and was to give his entire time and attention to the business; he had the authority to make contracts of purchase and sale upon such terms and conditions as seemed best to him, and to execute in the name of the partnership all necessary deeds, mortgages, bills of sale, and other instruments; 25% of the net profits of the business, over and above operating expenses including salaries, was to be distributed to the partners in the proportion of their interest, with all other profits remaining part of the partnership funds and capital; no partner could, without the consent of all others previously obtained in writing, sell or assign his share or interest in the partnership property or business to any person or persons; in the event of the death of a partner, the surviving partners agreed to purchase the decedent's interest, including accumulated profits, at a price not to exceed the net book value as shown by the partnership books; if any partner desired to withdraw, the other partners agreed to buy his interest in the partnership at a price not to exceed its net value as shown on the partnership books, including accumulated profits.

The children's capital contribution to the partnership consisted of the gifts made to them by their parents. In January, 1944, after Helen Ginsburg became 19 years old and her disabilities of minority were removed, appellants made a gift to her identical with that of the other children, and the gift tax return was filed and the tax paid thereon. Thereafter, she contributed her capital share to the partnership, and the partnership agreement was supplemented to include her. After January, 1944, the partnership consisted of the parents, owning 55% of the business, and all three children, each having a 15% interest. The net profits of the partnership were proportionately divided in 1942 and 1943, the two parents getting 70%, Arthur and Jeanette each getting 15%. In 1944, the parents received 55% of the net profits; and Jeanette, Arthur, and Helen each received 15%. The Commissioner levied deficiency assessments on the appellants on the total business income of the partnership for the years 1942, 1943, and 1944, instead of taxing each of the partnership owners according to their interest as it appeared in the partnership agreement.

■ The question presented to us is whether the court below correctly applied the test laid down by the United States Supreme Court in the case of Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 1218, in deciding whether this partnership agreement was valid so as to be recognized for federal income tax purposes, so that the income therefrom would be taxable to the partners in accordance with their respective interests and not in its entirety to the appellants. The Supreme Court has enunciated the doctrine that the controlling inquiry in such cases is whether, considering all the facts and circumstances, the parties in good faith intended to join together as partners. Some of the facts and circumstances specified by the court to be taken into consideration are: the agreement made between the parties, the conduct of the parties in the execution of its provisions, their statement, the testimony of disinterested persons, the relationship of the

parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used. The Supreme Court has definitely rejected some of the criteria heretofore considered controlling.

One of the factors to be considered is the dominion and control exercised by the children over the property. An evidentiary factor strongly indicative of the reality of their participation in the enterprise is that the partners were free to, and did, enjoy the fruits of this enterprise. There was no restriction placed on the usages of the partnership accounts. There are statements in the record of the various yearly withdrawals from the profits made by the children, as partners, for their own uses, purposes, and enjoyment. We think such withdrawals made against their accumulated shares of the partnership profits as, when, and in the amounts that they saw fit, are strongly indicative of the reality of their participation in and dominion over the income from their respective shares of the partnership property. The children had as much legal and actual control over these partnership assets and profits as did their father, though he was the duly selected manager of the business, a common practice which is necessary for orderly and convenient operation of such a joint enterprise. The partnership agreement discloses an intent to engage in business as partners. Each partner had an equal right to make withdrawals. None, without the consent of all the others previously obtained in writing, could sell or assign his or her share or interest in the business to anyone. In the event of the death of a partner, the surviving partners agreed to buy the decedent's interest, including accumulated profits, at a price not to exceed the net book value as shown on the partnership books.

The intention of the parties in executing the agreement was to create a valid partnership. The gifts to the children were unrestricted, unlimited, and unconditional. They contributed their property of their own volition, and entered into the partnership of their own free will. Two of them discussed the agreement, and one of them consulted an attorney, before executing it.

All parties testified that in executing the agreement they intended to become partners in the venture, and that they knew they might be, and were willing to be, personally liable for any losses the partnership might sustain. The firm was recognized by the Fort Worth National Bank and Dun & Bradstreet, who knew the parties that composed it. In a title examination, an attorney required that a conveyance be signed by all the partners, which was done. The partnership agreement and assumed-name certificate were duly filed and recorded in the County Clerk's office in Tarrant County, Texas. Appellants also made gifts of other property to the children, the value of which unrestricted gifts was greater than that of the assets of the Fort Worth Pipe and Supply Company given them. These other properties were separable from the business of the company, and could easily have been withheld by the children when the partnership was formed. With the realization that these properties would be subject to the liabilities of the partnership, and of their own free will, the children agreed to contribute these assets to the partnership capital. These other assets were productive of income, and the Commissioner, recognizing the validity of the partnership as to these assets, taxed the income therefrom to all the partners in accordance with their respective interests as set up in the partnership agreement. In determining the good faith of the transaction, we think it highly significant that the Commissioner recognized the validity of the partnership for tax purposes as to these other assets. If the partnership was valid as to these other assets, it should be valid as to all assets.

From the language in the opinion of the learned trial judge, it appears that he was influenced by the failure of the children to contribute services to this partnership. In part, he found that the relationship might be deemed valid as to others who should collaterally attack it, but invalid for federal income tax purposes, since the properties that were transferred by the father and mother to the children were properties which would, in any event, upon the failure of the business or upon the death of the father and the mother, vest in the children. The court

further said that none of the children contributed anything in the way of services, capital, or influence, to the business, directly or indirectly.

The finding by the trial court to the effect that this was a valid partnership between appellants and their children and others who might collaterally attack it, but not for tax purposes, cannot be sustained. As Mr. Justice Frankfurter said in his concurring opinion in the Culbertson case, there is no "special concept of 'partnership' for tax purposes differing from the concept that rules in ordinary commercial-law cases." A family partnership for income tax purposes is to be judged in the light of partnerships in general. A partnership is generally said to be created when persons join together their money, goods, labor, or skill, for the purpose of carrying on a trade, business, or profession, when there is a community of interest in the profits and losses. See Ward v. Thompson, 22 How. 330, 16 L.Ed. 249. The determining question is whether the appellants and their children really intended to carry on the business as partners. There was no finding by the court below that they did not in good faith intend to join together as partners; and it clearly appears that the agreement and conduct of the parties, their voluntary contribution of capital with the intention to engage in business and become liable as partners, their enjoyment of the fruits of the business in accordance with their agreed interests, the recognition by disinterested parties of the partnership business, and the good faith of the parties to the transaction,—all warrant the conclusion that the income of the business should be taxed to the owners thereof in accordance with the partnership agreement.

The decision appealed from is reversed, and the cause remanded with directions to the district court to enter judgment for the appellants.

Reversed.

RUSSELL, Circuit Judge, (dissenting).

Upon consideration of the evidence and the applicable law, I am of the opinion that the trial court's findings as affecting two of the alleged partners, the daughters, is abundantly supported, and that such finding as affecting the son, is not clearly erroneous. I therefore dissent from the judgment of reversal.