## BLALOCK et al. v. ALLEN.

### Civ. No. 652.

United States District Court
M. D. Georgia, Macon Division.
Oct. 11, 1951.

W. Herbert Hodges, Atlanta, Ga., for plaintiffs.

John P. Cowart, U. S. Atty., T. Reese Watkins, Asst. U. S. Atty., Macon, Ga., Frederic G. Rita, Sp. Asst. to Atty. Gen., for defendant.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Sp. Asst. to Atty. Gen., on the brief.

DAVIS, Chief Judge.

This is an action for the refund of income and estate taxes paid after deficiency assessments by the Commissioner. All of the deficiency assessments grew out of a ruling by the Commissioner that A. O. Blalock was not a valid partner for income tax purposes in four business concerns, known as Blalock Machinery and Equipment Company, Sand and Gravel Products Company, Central Sand and Asphalt Company, and Coffee Construction Company and Associates.

In 1925, D. B. Blalock and his wife, Estelle Z. Blalock, formed a partnership, known as the Blalock Machinery and Equipment Company. The purpose of the business was the sale of road machinery and equipment. Their son, D. B. Blalock, Jr., graduated from Georgia Tech and for two years worked in the plants of machinery manufacturers. Upon completion of this training, he was employed by the firm and, subsequently, was taken into the firm as a full partner.

This partnership has been recognized by the Commissioner as a valid partnership for income tax purposes. The firm thus continued to do business until 1939, when they took on a new line of machinery, which brought about an expansion in the scope of their business. At that time, and after numerous business conferences among the partners and between the partners and A. O. Blalock, father of D. B. Blalock, Sr., it was decided that A. O. Blalock should be taken into the firm as a partner. This was done in April, 1939, when the original articles of partnership were amended.

A. O. Blalock's entry into the firm was accomplished by the purchase by him from the individual partners of one-fourth of their interest in the assets of the business. He then invested his share of the assets of the firm in the partnership and thus became the owner of one-fourth of the business, and the defendant concedes that A. O. Blalock was the owner of a one-fourth proprietary interest in the business.

Several reasons were assigned for the decision to make A. O. Blalock a partner in the business. For many years he had served in the House of Representatives and the Senate of the State of Georgia. He had also held the position of Collector of Internal Revenue in Georgia for a number of years. Shortly after this he worked with the Federal Housing Authority and, finally with the Penal Board of the State of Georgia. He was known throughout the State and had a large following of friends, especially among people in the state and municipal governments. He had a considerable influence among the people who were in charge of purchasing heavy road equipment throughout the State. There is also credible evidence that, whereas D. B. Blalock, Sr. was inclined to be a bit visionary, his father was most conservative and an excellent business man. Since this was a sales business, personality and contacts were valuable assets to the business.

At the time of his purchase of a portion of each partner's interest in the assets of the firm, he gave to each partner his promissory note for the sum of $10,294.56. This sum was later revised, when it was learned that the book value of the assets had been erroneously calculated, and he gave the partners new notes totalling $15,247.08. These notes were kept in the vault of the firm and were in the custody of the firm

bookkeeper, who testified that the notes were paid from the profits of the business which accrued to the account of A. O. Blalock.

During the years in question, 1940, 1941, 1942 and 1943, A. O. Blalock maintained an office in the offices of the Blalock Machinery and Equipment Company. He participated in business conferences with the other members of the firm and assisted them in the formation of the policy which was to guide the company. He advised with the salesmen of the company and attended most of the meetings of the County Commissioners throughout Georgia, the County Commissioners being the men responsible for buying the larger part of the road machinery sold in the State of Georgia. He also called on many of the County Commissioners with the salesmen.

Under the terms of the partnership agreement, A. O. Blalock was entitled to a one-fourth share of the profits of the business and was liable for one-fourth of the losses, if any, as were the other partners. He could withdraw his share when and as he pleased. While he did not at first have the authority to write checks, this authority was given to him in 1940, though it was never exercised. It was also testified that the other partners seldom, if ever, personally wrote checks, most of this being handled by the bookkeeper or other employees authorized to write checks.

During his association with the firm, A. O. Blalock did make certain withdrawals. In no year did he withdraw any sizable portion of his earnings. A considerable portion of his withdrawals was used in paying his income taxes. He did, however, make other withdrawals. There was testimony to the effect that he was free to withdraw his full share if he so desired.

Another provision of the partnership agreement was to the effect that, upon his death, A. O. Blalock's share in the business would pass to D. B. Blalock, Sr., if he were in life. If he were not in life, it would go to Estelle Z. Blalock, and, if she were not living, to D. B. Blalock, Jr. There was no provision for any payment to be made

for this share. This differed from the provisions relating to the shares of the other partners. The agreement provided in regard to their interests that certain of the surviving partners should have the right to buy such interest at its then book value.

On August 1, 1939, these same four persons, together with a Mrs. Browning, entered into an agreement for the conduct of a business, to be known as Sand and Gravel Products Company as a five member partnership. The only contribution of capital which A. O. Blalock made to this firm came from the profits of the Blalock Machinery and Equipment Company. The amount of his contribution was charged against his account in that firm. This firm produced or excavated and sold sand. This company had two main operations, one at Dallas, Georgia, and one at Lakeland, Georgia. A. O. Blalock rendered only minor services in connection with the Dallas operation, but he did render extensive services at the Lakeland operation. He ascertained the location of the sand and negotiated for the lease. He stayed there off and on during the entire operation. At the end of the first year of operations, A. O. Blalock withdrew his share of the profits of this business and that money was not invested in any of the other companies. On the dissolution of this firm on July 31, 1940, he withdrew the balance of his share of the earnings of the firm and transferred it to Blalock Machinery and Equipment Company, on whose books it was treated as an investment of capital.

On February 1, 1940, the four Blalocks organized a new business, known as the Central Sand and Asphalt Company. Each of them, including A. O. Blalock, contributed $1,000 to the capital of this business. This money was contributed in cash and did not come from the funds of any of the other companies. The business of this concern was the manufacture of asphalt, and the scene of operations was Jessup, Georgia. A. O. Blalock contributed extensive services to this business. He and D. B. Blalock, Jr. arranged for the lease on the sand-pit which they were using. Together they supervised the operation. During the first two years of operation the concern

made considerable profit and A. O. Blalock did not withdraw all of his share of the profits. Much of the cash which he withdrew was for investment in one of the other firms. On November 14, 1942, this concern made a loan to the Blalock Machinery and Equipment Company in the amount of $75,000, for which a note was given. Shortly thereafter this indebtedness was cancelled by charging one-fourth of the amount to each of the four Blalocks as personal withdrawals from the Central Sand and Asphalt Company and crediting them with capital contributions to Blalock Machinery and Equipment Company in a like amount. On December 30, 1942, profits totalling $60,000 were transferred to Blalock Machinery and Equipment Company. On the books of Central Sand and Asphalt Company, this was treated as a cash withdrawal by each of the four alleged partners and on the books of Blalock Machinery and Equipment Company, it was treated as an investment of additional capital. From January 31, 1943 to November 5, 1943, the date of the death of A. O. Blalock, the Central Sand and Asphalt Company suffered a loss and his share of that loss, $10,603.63, was charged to his account.

On January 29, 1943, the four Blalocks, together with L. M. and C. G. Coffee, formed the firm known as Coffee Construction Company and Associates, for the purpose of building air-fields. The Coffees owned one-half of the business and the Blalocks one-half or one-eighth each. None of the Blalocks contributed any services to the operation of this business. Capital contributions of $60,000 were made from the profits of Central Sand and Asphalt Company and $15,000 of this amount was charged against the capital account of each of the Blalocks on the books of Central Sand and Asphalt Company. Each of the partners later withdrew the $15,000 he had originally invested. A. O. Blalock made no other withdrawals from the profits of this business.

The plaintiffs herein claim that A. O. Blalock was a partner in each of the firms heretofore mentioned during the tax years in question. They have filed their tax returns on that basis. The first income tax return so filed was for the tax year 1939. These returns reflected a four-way division of the profits earned during that portion of a year, but involved only Blalock Machinery and Equipment Company. The Commissioner ruled that A. O. Blalock was not a partner and assessed deficiencies against D. B. Blalock, Sr., Estelle Z. Blalock, and D. B. Blalock, Jr. An action was filed in this Court to recover income taxes allegedly erroneously assessed for the year 1939. It was held that A. O. Blalock was not a partner for tax purposes and a judgment for the defendant was affirmed by the Court of Appeals for the Fifth Circuit. Blalock v. Allen, D.C., 56 F.Supp. 266, affirmed 151 F.2d 927.

The plaintiffs have paid deficiencies assessed against them on account of a disallowance of A. O. Blalock's membership in the partnerships for each of the tax years 1940, 1941 and 1943. They filed this action to recover those amounts.

The prior action to recover income taxes paid by the plaintiffs did not involve all four firms and said action was filed prior to the decision of Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, and Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659.

After the death of A. O. Blalock on November 5, 1943, the Commissioner assessed additional estate taxes against his estate on account of the failure to include in the gross value of his estate the value of his proprietary interests in the three firms still operating at his death. His estate now contends that, if he was not a partner, the value of his interest in the firm belonged to the other three Blalocks and should not be included in his estate. The defendant contends that, while not a partner for income tax purposes, he did own a proprietary interest in these firms and estate taxes were due thereon. The estate has paid these taxes and now seeks a refund.

The Commissioner also assessed a deficiency against the estate of A. O. Blalock, contending that the refunds to which he was entitled on account of a disallowance of the partnerships for income tax purposes were choses in action, which should have been included in the gross value of the

estate. The Estate paid this additional tax and now seeks a refund thereof, on the ground that he had never filed claims for refund and they were not, therefore, property such as should be included in his estate, even if he were in fact entitled to them.

The Commissioner has also made a deficiency assessment against the estate of Estelle Z. Blalock, who has since died, contending that since most of A. O. Blalock's income taxes were paid from profits of the firms to which he was not really entitled, that one-third of his right to refunds were actually the property of Estelle Z. Blalock and should have been included in her estate. Her executor has paid this additional tax and, as plaintiff herein, seeks its refund.

The first question to be decided is whether or not the previous action brought by the plaintiffs for the recovery of income taxes assessed and paid for the tax year 1939 constitutes an estoppel by judgment on the question of whether or not the partnerships here under scrutiny, or any of them, were valid for income tax purposes. This is the defendant's primary contention throughout the case. If the defendant is entitled to a judgment in this case, it must be upon this ground. Very little attack has been made on the validity of the partnerships for income tax purposes in this case. The defendant has chosen instead to rest his case on estoppel by judgment.

█ In turning to a consideration of this question there are several things to be remembered. The case of Commissioner v. Culbertson, supra, makes it clear that, for a partnership to be upheld on the basis of contribution of services, it must be based on the performance of services in the tax year in question. Services to be rendered in the future are not sufficient to sustain the bona fides of a partnership. For that reason, it is clear that any evidence of services rendered by A. O. Blalock in years subsequent to 1939 could have no bearing on the existence of a partnership in 1939. Though some such evidence was received in the previous litigation, we do not feel that it could have been considered as the basis for that decision. Therefore, in this case we have evidence of services rendered which is pertinent here but which was not directly pertinent in the previous action, applying the Culbertson rule. Thus, we have a somewhat different factual picture.

█ In the previous action, no other firms but the Blalock Machinery and Equipment Company were involved. For that reason, services rendered to the other firms and capital invested in them were not before the court at that time. Likewise, it does not appear that there was any disclosure of the capital withdrawn from the other firms and invested in Blalock Machinery and Equipment Company. The previous decision could not be estoppel by judgment as to the validity for tax purposes of the Sand and Gravel Products Company, Central Sand and Asphalt Company, or the Coffee Construction Company and Associates. Since this Court finds those to be valid partnerships, any contribution to Blalock Machinery and Equipment Company by A. O. Blalock of capital derived from the other firms must be held to be an investment of his own capital, which would be another factor which does not appear to have been considered in the previous litigation.

█ Thus, the factual picture presented to this Court in the present case is not the same as that presented in the prior litigation. It is conceded by the defendant that each tax year constitutes a new cause of action. For that reason, the previous judgment could not be res judicata and thus binding as to all matters which might have been litigated in the previous action. Since this is a separate cause of action, if the previous judgment is to avail the defendant, it must be as estoppel by judgment, which applies only to such matters as were actually litigated in the previous case. A different factual picture or a different legal atmosphere will prevent the previous judgment from operating as estoppel by judgment. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L. Ed. 898.

In this case, we have a different factual picture, as above indicated, and a change in legal atmosphere. The plaintiffs claim that

874

they have shown investment of original capital by proving investment of funds derived from other firms. Under what seems to be the present rule, this would not even be necessary. Under Commissioner v. Culbertson, supra, the contribution of capital originating with the partner is not essential and a recent decision of the Court of Appeals for the Fifth Circuit upheld a partnership based entirely on the contribution of capital, which the contributor had acquired by gift from a member of the family. Ginsburg v. Arnold, 5 Cir., 185 F.2d 913, 915. This clearly represented a change in the legal atmosphere, if not a change in the law. This is evidenced by the fact that the Court of Appeals for the Fifth Circuit, after the decision of the Culbertson case, vacated a decision of affirmance in the case of Ginsburg v. Arnold and subsequently reversed that case on the basis of the Culbertson rule. In its opinion, the Court, in speaking of the Culbertson decision, said: "The Supreme Court has definitely rejected some of the criteria heretofore considered controlling." In another recent decision, the Court of Appeals for the Fifth Circuit upheld a family partnership involving two minor daughters, one of whom had contributed nothing to the business except a promissory note, which was later paid from the profits of the business. Arnold v. Green, 5 Cir., 186 F.2d 18. This also represents a change in the legal atmosphere surrounding family partnerships. That would seem to be one of the main tests in determining whether estoppel by judgment is to be applied.

In Commissioner v. Sunnen, supra [333 U.S. 591, 68 S.Ct. 720], the Court said:

"But collateral estoppel is a doctrine capable of being applied so as to avoid an undue disparity in the impact of income tax liability. A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes. If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. * * * Such consequences, however, are neither necessitated nor justified by the principle of collateral estoppel. * * * It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers.

"And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. * * * As demonstrated by Blair v. Commissioner, 300 U.S. 5, 9, 57 S.Ct. 330, 331, 81 L.Ed. 465, a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable. * * * Tax inequality can result as readily from neglecting legal modulations by this Court as from disregarding factual changes wrought by state courts. In either event, the supervening decision cannot justly be ignored by blind reliance upon the rule of collateral estoppel."

█ A different factual picture is presented and the legal atmosphere has been significantly altered since the prior trial. The doctrine of collateral estoppel will not be applied so as to deprive the plaintiffs of their right to have their tax liability decided in accordance with the recent legal decisions, and on the basis of the facts as they now appear.

█ Having disposed of that phase of the case, there would seem to be little difficulty in reaching a conclusion. This Court finds that A. O. Blalock was a bona fide partner and that the partnerships were valid and were entered into in good faith for business purposes.

Considering all the evidence, this Court finds that the parties in good faith, and

acting with a business purpose, intended to join together in the present conduct of each of the four enterprises here involved during the tax years in question. His contacts, his business experience and his conservatism were valuable assets to the businesses in which he joined. Since A. O. Blalock was a member of the partnerships involved, one-fourth of the income of the firms was properly attributed to him and the Commissioner erred in attributing it to the other partners and assessing deficiencies thereon.

As to the questions concerning estate taxes, the Court's findings and conclusions as to the validity of the partnership would seem to dispose of those. Since this Court finds that A. O. Blalock was a member of each of these partnerships, the Estate concedes that estate taxes were due on the proprietary interest which he owned in each firm. As to this phase of the case, their action was brought in the alternative. They cannot prevail in their effort to recover that part of the estate tax. As to the estate taxes assessed against the estates of A. O. Blalock and Estelle Z. Blalock, on account of tax refunds which the Commissioner ruled were due A. O. Blalock, the plaintiffs must prevail on these. This decision negates the right of A. O. Blalock to any refund of income taxes. Thus, the claims for refund could not be considered a part of either of these estates and would not be considered in arriving at the estate taxes.

Let the plaintiffs present a judgment in accordance with this opinion.