TURNER et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 13975.

United States Court of Appeals
Fifth Circuit.

Nov. 18, 1952.

Russell, Circuit Judge, dissented.

Robert Ash, Washington, D. C., for petitioner.

William L. Norton, Jr., Sp. Asst. to Atty. Gen., Ellis N. Slack, Acting Asst. Atty. Gen., Mason B. Leming, Chief Coun-

---

sel, Bur. Int. Rev., Washington, D. C., John M. Morawski, Sp. Atty., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Filed by taxpayers who were members of a partnership, this petition for review presents another family partnership question and another decision by the tax court, declaring that, though valid under state law as to all of the taxpayers, and recognized by the partnership and the persons they dealt with as valid as to all of them, it was, as to some of them, invalid for income tax purposes.

The facts[1] are not in dispute. The taxpayers are here insisting that the tax court

1. A statement of those that are essential to an understanding of our decision may be briefly made. The original partnership consisting of three brothers, Louis, C. Davis, and H. S. Turner, and their wives, was organized in 1941 to take over the assets of a corporation which was liquidated on the same date. The six individuals had owned all of the stock of the corporation and were equal partners in the partnership. It operated three retail stores located in three different cities. Each brother and his wife managed and operated one of the stores and resided in the city where the store was located. C. Davis Turner was selected as managing director of the partnership. He kept the books and records and issued checks for most of the bills of the partnership.

In 1944 the parents of Rebecca Turner decided that they wanted to take her into the partnership. At the same time the other two Turner brothers and their wives decided to take the eldest son of each into the partnership, and the parties agreed that the partnership should be enlarged accordingly. At this time, Rebecca was 27 years of age, Jerome was 17, and Melvin was 15. Each of the six partners executed an instrument by which each conveyed to his child a 1/24th interest in the existing partnership. Thus each parent reduced his or her interest in the partnership to 3/24ths and each of the three children acquired an interest of 2/24ths. Each parent filed a gift tax return in connection with the transactions.

No new partnership agreement was executed, nor were any substantial changes made in the management, operation or general conduct of the business as a result of the changes in the partnership. The two boys were in high school during most of 1944, but they continued to work in the stores after school and on holidays.

While the gift instruments were not recorded, formal written notice of the new partnership was not given, and there was no publication of the new partnership as constituted by taking in the three new members, and no recording under the fictitious name statute; all the employees of the stores were advised of the change, as were insurance agents who did business with the partnership. The local bank in each city was orally advised of the new partnership arrangement and in some instances honored checks written by the new partners. There was testimony by officers of the two banks that they recognized Jerome and Melvin as partners and would have loaned money on their signatures.

The tax court, while finding that the boys did not become partners for tax purposes, nevertheless found that Rebecca did become a partner and the case as to the correctness of that ruling is not, except for its bearing on the decision as a whole, before us.

Jerome and Melvin had worked in the stores in 1943. Jerome had received a salary of $1900 in 1943 and Melvin had received about $1500. During 1944, Jerome and Melvin withdrew from the partnership $810.25 and $625.00 respectively, including $185.25 withdrawn by Jerome during January through March, which was entered on the books as salary and later charged to his drawing account. Rebecca and Melvin did not make any withdrawals until August, and thereafter they withdraw $125.00 per month. All of the new partners were, however, credited on the books with their distributive shares. The withdrawals during 1944, related above, were in addition to withdrawals for tax payments on their distributive shares of the partnership income. Withdrawals by the other partners, in excess of tax payments, ranged from $5000 to $17,000 in 1944.

A reasonable portion of the testimony is devoted to establishing the services contributed by the three new partners during 1944. The Government contending that for the most part those services were a continuation of services contributed in previous years. Jerome and Melvin, however, did devote most of their free time to the business and while they were not active in the management to

decided this case as though Culbertson had not been written, and as though the view condemned in that case, that the so-called objective Tower tests were controlling, is still the correct view. Quoting from the Culbertson case, taxpayers say that "the vice in the 'tests' adopted by the Tax Court" here is the same as that condemned in the Culbertson[2] case in this language:

> "Unquestionably a court's determination that the services contributed by a partner are not 'vital' and that he has not participated in 'management and control of the business' or contributed 'original capital' has the effect of placing a heavy burden on the taxpayer to show the bona fide intent of the parties to join together as partners. But such a determination is not conclusive, and that is the vice in the 'tests' adopted by the Tax Court. *It assumes that there is no room for an honest difference of opinion as to whether the services or capital furnished by the alleged partner are of sufficient importance to justify his inclusion in the partnership. If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient. \* \* \*"* (Emphasis supplied.)

They urge upon us, therefore, that the evidence, all of which came in without

dispute, conclusively establishes the fact of the agreement and of its *bona fides,* and that the decision was wrong as matter of law. In the alternative, they insist that if, in the face of the explicit and unequivocal character of the evidence and the overwhelming support given to their claim that there was a partnership, it can be said that there was some evidence tending in a contrary direction, such evidence was a mere scintilla, and the finding complained of was contrary to the weight and force of all the credible evidence and to the truth and right of the case.

On his part, the commissioner seeks to support the judgment of the tax court holding that Jerome and Melvin were not *bona fide* partners (1) by pointing, as was done in the Tower case, C. I. R. v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, to the fact that there was no new capital, that is, *capital originating with the new partners,* invested in the business, and (2) by insisting, as was done in the Tower case, that the boys contributed no vital services, that is, they did not participate in the management and the arrangement, and that, therefore, their inclusion as partners served no business purpose.

In doing this, he and the tax court pay little heed to the authoritative statements of the Supreme Court in the Culbertson case:

> "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case,

---

any extensive degree, they did contribute valuable services. They were in charge of the stores when their fathers were away on business; often opened the stores in the morning; had access to the safe; instructed employees; worked late into the night; handled cash, and made purchases from salesmen who called at the stores when their father and mother were away. Both boys, in spite of their youth, exhibited a high degree of understanding and knowledge of the mercantile business and demonstrated mature business judgment.

The partnership was dissolved in 1947 in favor of a corporation which was

formed that year. The partners were issued stock at the ratio of their interest in the partnership. $195,000 in bonds owned by the partnership were distributed in 1947, each partner receiving his distributive share. Also at that time C. Davis Turner and Louis Turner and wife executed interest bearing notes to their sons to adjust their interests, the senior Turners having withdrawn in cash more than their shares of the earnings. There was testimony that payments had been made on some of those notes.

2. Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 1215, 93 L.Ed. 1659.

* * *." 337 U.S. 733, at page 742, 69 S.Ct. 1210, at page 1214, 93 L.Ed. 1659;

and again, 337 U.S. at page 745, 69 S.Ct. at page 1215:

*If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient. The Tower case did not purport to authorize the Tax Court to substitute its judgment for that of the parties;* it simply furnished some guides to the determination of their true intent. * * *" (Emphasis supplied.)

We find ourselves in agreement with the taxpayers that this is another of the post Culbertson cases in which, though the tax court correctly posed the question for decision, whether the members of the existing partnership did, in good faith and acting with a business purpose, intend to join together as partners in the conduct of the merchantile business, and correctly concluded as to Rebecca that they did, it incorrectly concluded without any evidence to support the conclusion that they did not intend to join as to Jerome and Melvin.

In the Culbertson case, the Supreme Court, deprecating the tax court's approach to the family partnership problem and its error in treating as essential to a family partnership for tax purposes the contribution of either *vital services* or *original capital,* goes on to say:

"The Tower case thus provides no support for such an approach. We there said that the question whether the family partnership is real for in-

come-tax purposes depends upon 'whether the partners really and truly intended to join together for the purpose of carrying on the business and sharing in the profits and losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their "agreement, considered as a whole, and by their conduct in execution of its provisions." * * *' 327 U.S. [280] at page 287, 66 S.Ct. [532], at page 536, 90 L.Ed. 670."

The record in this case will be searched in vain for one syllable, nay even one lisp, in contradiction of the joinder here of intention and fact to make a valid partnership. It is quite plain that what has happened below here is the same thing that happened in the tax court in the Culbertson case which caused the Supreme Court to say: "* * * that is the vice in the 'tests' adopted by the Tax Court. It assumes that there is no room for an honest difference of opinion as to whether the services or capital furnished by the alleged partner are of sufficient importance to justify his inclusion in the partnership." In short, the tax court has permitted itself to determine contrary to the agreements of the parties that the amount of capital furnished or the services rendered were not a sufficient consideration under the tax statutes to effectuate the creation of a partnership.

Because this court has in two recent opinions[3] dealt fully with this whole question, we will not further labor it here. It will suffice for us to say that upon the authority of the Culbertson case and of cases[4] decided in this court since that case came down, the judgment of the tax court is reversed and the cause is remanded with directions to enter judgment for the taxpayer and determine the deficiencies accordingly.

---

3. Alexander v. Commissioner, 5 Cir., 194 F.2d 921; Seabrook v. Commissioner, 5 Cir., 196 F.2d 322.

4. Ginsburg v. Arnold, 5 Cir., 185 F.2d 913; Arnold v. Commissioner, 5 Cir., 186 F. 2d 18; Batman v. Commissioner, 5 Cir.,

189 F.2d 107; Alexander v. Commissioner, 5 Cir., 194 F.2d 921; Seabrook v. Commissioner, 5 Cir., 196 F.2d 322; and Culbertson v. Commissioner, 5 Cir., 194 F.2d 581.

RUSSELL, Circuit Judge (dissenting).

Upon the record, the controlling question of whether Jerome and Melvin Turner became *bona fide* partners in the business enterprise is close, but one which could be answered either way. To find and declare the answer in such an instance is the function primarily of the Tax Court. Since I find adequate basis for the determination that Court has made, I do not agree that it is clearly erroneous, and therefore respectfully dissent.